[Crim. No. 1130.   Third Appellate District.—September 8, 1930.]

THE PEOPLE, Respondent, v. EVERETT GALLAGHER, Appellant.

A. H. Carpenter for Appellant.

U. S. Webb, Attorney-General, and J. Charles Jones, Deputy Attorney-General, for Respondent.

MR. JUSTICE PLUMMER Delivered the Opinion of the Court.—The defendant was tried and convicted upon an information charging the crime of rape alleged to have been committed upon the person of a girl of the age of thirteen years and was sentenced to serve one year in the county jail. From the judgment of conviction and the denial of his motion for a new trial the defendant appeals.

The first point made for reversal is that there was no testimony proving the *corpus delicti* of the offense alleged. A review of the testimony of the complaining witness reveals that she testified that she had sexual intercourse with the defendant at the time and place set forth in the information. This testimony completely answers the appellant's contention.

The argument of the appellant likewise, that he was convicted upon the uncorroborated testimony of the complaining witness furnishes no ground for a reversal of the judgment. A review of the cases cited in 22 California Juris-

prudence, page 399, shows clearly that if the jury accepts the testimony of the complaining witness as true, nothing further is required to sustain a conviction. The cases cited are all one way and it is unnecessary to refer to any authorities other than those cited in California Jurisprudence to which we have referred.

The appellant makes the further argument that the court committed prejudicial error in refusing to permit a witness called for the defense to relate a conversation alleged to have been had with the prosecuting witness some weeks after the occurrence of the alleged offense. The record shows that the prosecuting witness was not asked if she had made any such statements. The ruling of the court was correct. Section 2051 of the Code of Civil Procedure specifies the manner in which a witness may be impeached. No attempt was made to comply with the provisions of the section. We are cited to authorities having to do with statements made by defendants, none of which are applicable to this case.

It is finally urged that the court erred in refusing to give two instructions requested by the defendant. The first of these instructions reads:

"You are instructed that one of the principal elements of rape consists of the penetration of the female genital organs by the defendant, and that as the prosecution has failed to prove such or any penetration thereof on the part of the defendant, the court advises you to acquit the defendant."

It is only necessary to call attention to the fact that this instruction includes in part an instruction upon the facts in these words, "and that as the prosecution has failed to prove such or any penetration thereof on the part of the defendant," etc. That was a fact for the jury to decide and not for the court.

The second instruction is as follows:

"That in all cases of this character, where there is no corroborating evidence of the complaining witness' testimony as to the alleged rape, her testimony should be taken and considered with caution, and in this case if you believe that there was substantially no corroborating evidence as to the commission of the rape that she claims was perpetrated upon her, you should consider and scrutinize her testimony

with caution, and if after such consideration there remains in your mind a reasonable doubt as to the defendant's guilt, your verdict should be not guilty.''

The court elsewhere instructed the jury that all of the evidence must be fairly considered, that the jury was to decide the case in accordance with the rules of evidence and not to go outside of the evidence admitted by the court, that a witness was presumed to speak the truth, that this presumption, however, might be rebutted by the manner in which the witness testifies, by the character of his testimony or by anything affecting the witness' character, honesty, integrity, or by his motives, or by contradictory evidence, and that the jury was the exclusive judge of the witness' credibility, and, further, that the defendant was presumed to be innocent until the contrary is proven, and that, in case of a reasonable doubt, the defendant was entitled to an acquittal.

While in a number of the cases cited by appellant the giving of such an instruction has been held proper, in no case cited by either the appellant or respondent, nor in any case which we have been able to find, has it been held that the failure to give such an instruction constitutes reversible error. In 22 California Jurisprudence, page 408, section 49, the text as to cautionary instructions reads:

''Although there is no statute especially requiring it, the court may instruct the jury to view the testimony of the prosecutrix with caution where she is a child of tender years and her testimony is uncorroborated, since in this class of cases the accused is almost defenseless and ample opportunity is afforded for the free play of malice and private vengeance. On the other hand, the refusal of such an instruction is not error where the prosecutrix is not a child of tender years, where her testimony is corroborated, or where the matter is covered by other instructions, as where the jury are charged to consider the matter calmly, dispassionately and deliberately as they would any other accusation. An instruction that it is 'dangerous' to convict upon the uncorroborated testimony of the prosecutrix may be refused as argumentative.''

In the case at bar the complaining witness was some months over the age of thirteen years. Her testimony is to the effect that she and another man and girl were riding

in an automobile late in the evening, that at a point near a bridge on the highway where they were traveling, the gasoline apparently gave out and the engine stopped, that at this point she and the defendant, after a lapse of a little time, consumed in getting an additional supply of gasoline, went down under a bridge on the highway near the automobile, that a cushion from one of the seats of the car was thrown out, that this was taken under the bridge, that she was placed thereon by the defendant and the act of coition accomplished. While the prosecuting witness and the defendant were not far from the other man and woman in the automobile, it is not shown that they were in plain sight, nor is our attention called to any testimony showing that the defendant and the prosecuting witness did not go under the bridge in question as testified to by her. The occurrence took place late at night, some of the testimony being to the effect that it was about midnight. Other testimony is to the effect that the girl did not get home until about 3 o'clock the next morning. The defendant is a married man, although not living with his wife. What he was doing with a thirteen year old girl under a bridge at that hour of night was a proper matter for the jury to consider in determining the credibility of the girl's testimony, and we think, to some extent at least, corroborative of the incidents related by her.

The reasoning in the following cases, while not expressly so holding, is to the effect that the failure to give the cautionary instructions does not constitute reversible error: *People* v. *Caldwell*, 55 Cal. App. 280, 298 [203 Pac. 440]; *People* v. *Anthony*, 185 Cal. 159 [196 Pac. 47]; *People* v. *Dasey*, 75 Cal. App. 439 [242 Pac. 876]; *People* v. *Jones*, 76 Cal. App. 144 [244 Pac. 101].

The girl in this case was not of such tender years as to in any manner give rise to the inference that her testimony was given without understanding, or that she did not fully realize the acts to which she was testifying.

The instruction refused by the court, if couched in appropriate language, would strongly trench upon the rule forbidding courts to instruct the jury upon questions of fact, and, also, upon the rule against calling the jury's attention particularly to the testimony of any witness. It contains language which justified the court in its refusal

to read the instruction to the jury. The refused instruction contains an express statement relative to the alleged facts, as shown by the following excerpt: "You are instructed that in all cases of this character, where there is no corroborating evidence of the complaining witness' testimony as to the alleged rape, her testimony should be taken and considered with caution," etc. It first states that in all cases of this character, where there is no corroborating testimony, and after making that statement, there does appear the modifying language in these words: "And in this case if you believe that there was substantially no corroborating evidence," etc. After making the statement that there was no corroborating evidence the jury is admonished that if they believe there is no substantial corroborating evidence, etc., the jury should acquit. This language might very well lead to a confusion of ideas and uncertainty as to what was meant by the word "substantially," which leads us to the conclusion that if the trial court had deemed it a proper case to give a cautionary instruction, it constituted no error in refusing the instruction requested.

No case has been called to our attention holding that the refusal to give such an instruction is reversible error, and no reason being assigned in this case why we should so hold, we conclude that the judgment should not be reversed for the failure of the court to instruct as requested.

Finding no reversible error, the order and the judgment of the trial court are affirmed.

A petition for a rehearing of this cause was denied by the District Court of Appeal on September 23, 1930, and the following opinion then rendered thereon:

THE COURT.—Appellant, in his petition for a rehearing, makes the point that there is very slight foundation in the record for the comment of the court upon the testimony to the effect that the following appears therein: That the complaining witness and another man and girl were riding in an automobile late in the evening, that at a point near a bridge on the highway where they were traveling the gasoline apparently gave out and the engine stopped, that at this point the complaining witness and the defendant, after a lapse of a little time, consumed in getting an addi-

tional supply of gasoline, went down under a bridge on the highway near the automobile, that a cushion from one of the seats of the car was thrown out, that this was taken under the bridge, that she was placed thereon by the defendant and the act of coition accomplished. While the prosecuting witness and the defendant were not far from the other man and woman in the automobile, it is not shown that they were in plain sight, nor is our attention called to any testimony showing that the defendant and the prosecuting witness did not go under the bridge in question as testified to by her. The occurrence took place late at night.

We take the following from appellant's brief:

"When the car stopped for lack of gas the defendant got out and lifted up the engine hood. Then Dudley got out and went down under the bridge where the water was. Then I got out of the car of my own free will, and went down to the bridge with the defendant. The cushion was there directly under the bridge. The defendant placed it there. I don't remember what happened there. The defendant did not ask me to do anything. . . . I got on the cushion first. Dudley took the cushion out of the machine and threw it down to the bridge, near the water. We were there by the bridge about twenty minutes."

We take the following from the testimony of the witness Dudley, as set forth in appellant's brief:

"The machine went on the bum, and we got out. Defendant lifted up the hood of the car, and I did not see him go anywhere. I did not see her go down to the bridge at all. I did not throw the cushion down toward the bridge; I am sure of that. If it got down to the bridge, I don't know how it got there. I did not see the defendant on the cushion or with the cushion. When we ran out of gas the girl and I stayed in the car, and the defendant went to town to get some gas. After he put in the gas we went directly to the girl's home and left her there."

The defendant's testimony thus appears in the brief:

"At the last stop I got out and raised the hood and found there was no gas. There were cars passing and I tried to flag them. Finally a friend of mine came along in a car, and he took me to town. I then bought a can of gasoline . . . I got back to the car with the gasoline around

10 o'clock. When I left for the gas Dudley and his girl were sitting in the car, and when I came back they were still there. I did not go down to the bridge until I came back with the gas. While I was there I did not see either Dudley or the girl go down to the bridge. When I came back with the gas, I took out the cushion to get the tools. . . . Dudley did not take the cushion out of the car and throw it down to the bridge while I was there. I never at any time made any improper advances of any kind or nature to the Morgan girl. I never had any improper relations with her. When I left her at home it was about 11:15 P. M.

The testimony of the mother of the girl was that they reached home about 3 o'clock the next morning.

If, as alleged in the petition for a rehearing, the occurrences related in the transcript leading to the conviction of the appellant all took place "in broad daylight," the excerpts which we have taken from the appellant's petition for a rehearing would not lead the jury to any such conclusion. Whether there was or was not a second girl in the party is wholly immaterial. As to whether the defendant or the prosecuting witness told the truth was a matter wholly for the jury.

The petition for a rehearing is denied.

A petition by appellant to have the cause heard in the Supreme Court, after judgment in the District Court of Appeal, was denied by the Supreme Court on October 6, 1930.