[Crim. No. 1968. Third Dist. Sept. 20, 1946.]

THE PEOPLE, Respondent, v. EUGENE OWSLEY, Appellant.

Blaine McGowan for Appellant.

Robert W. Kenny, Attorney General, and James O. Reavis, Deputy Attorney General, for Respondent.

PEEK, J.—Appellant was charged by an information with the crime of rape, to which he pleaded not guilty. The jury found him guilty as charged and recommended that he be imprisoned in the state prison. This appeal is from the judgment of conviction and the order of the trial court denying his motion for a new trial.

At the time of the alleged act, Eleanor, the 13-year-old prosecuting witness, was visiting her sister Edna, the wife of appellant, in the latter's home in Rohnerville, Humboldt County. Two or three days after her arrival it was agreed she could visit another sister, aged 16, who was staying with a Mrs. Peggy Shirley in Fortuna. On the afternoon of October 11, 1945, the prosecutrix was driven to the Shirley house by appellant and his wife. Approximately one hour after midnight of the same night, appellant returned to the Shirley house, pounded on the door, and, according to Mrs. Shirley, in answer to her inquiry, announced: "It's Gene, Peggy; We've come for Eleanor." The girls, who were sleeping together, were aroused by her; Eleanor hurriedly put on her sweater and slacks and, leaving her shoes behind in her haste, joined appellant in his car. The prosecutrix testified that she expected to find her sister there also, but was told by appellant that Edna had stayed home. She further stated that when she noticed he was driving in a direction away from his home, she asked where he was going, and was told in effect to shut her mouth or he would rape her then and there; that he drove to a point near a river where he and Edna sometimes went fishing, turned off into a lane, and parked the car in a secluded spot. Her testimony regarding the act itself was that appellant forced her down on the front seat, forcibly removed part of her clothing, and, after telling her he would use a contraceptive so that she could not get in "a family way," had sexual intercourse with her, causing her severe pain. She testified further that after consummating the act, he told her that if she did not tell what had happened he would buy her a pair of shoes, and if she did he warned that he would kill her; that in his car was a club which looked like a hammer handle, one end of which had been carved into the shape of a knot; that he then drove home, and she immediately went to bed; that she said nothing to her sister Edna because she was afraid of him and what he might do to her in carrying out his threat; that she stayed awake the remainder of the night, and as soon as it was light left the house, went to the home of her brother Frank who lived only

a block or two away, and immediately told him and his wife what had happened. When appellant came to the house approximately an hour later and asked Frank if he was going hunting as they had planned he was confronted by the prosecutrix, and in the presence of Frank, and at his request that she tell appellant what she had just told them, she accused appellant of attacking her the night before. Although appellant categorically denied the accusation, he made no other comment nor asked for the details of her story. He then left the house saying that if he was wanted he would be at his home. Shortly thereafter Eleanor, accompanied by her brother and sister-in-law, was examined by a physician who testified concerning the physical condition of the girl: That her condition could have been the result of many factors; that he could not say it was solely the result of sexual intercourse or that she had participated in such an act during the preceding 24-hour period; but that the condition could have been the result of the alleged act of appellant.

In testifying in his own defense, appellant admitted calling for Eleanor on the night in question and taking her to the river, but he denied parking the car as she testified or attacking or otherwise molesting her. He stated that he drove to a point on the river where he intended to gaff fish if any were coming over the riffle; that for approximately half an hour they listened for fish, and that for the remainder of the time he was at the water's edge and the girl was in the car. He explained that his wife had asked him to bring Eleanor home from the Shirley house before he went on his proposed hunting trip with Frank, that he had been with a friend fishing until about midnight, and that it occurred to him it would be a good time to take Eleanor fishing, as she had always asked to go with him and Edna. He admitted that he did not have his gaff hook with him, and did not take a flashlight to the water's edge. He could not definitely state when it was that his wife had asked him to bring Eleanor home, and gave no reason for failing to call for Eleanor when he and his friend passed through Fortuna on their way to Rohnerville, some time before midnight on the same evening.

Other witnesses detailed certain incriminating facts, including the brother and sister-in-law of the prosecutrix, who testified to the frightened and tearful appearance of the child and the blood-stained and torn condition of her slacks a few hours after the alleged commission of the offense.

Counsel for appellant in his opening brief, after summarizing the evidence, refers to portions of the testimony which he states he desires to call to the attention of this court, and next specifically sets out four instructions, among them the so-called cautionary instruction, which he requested be given to the jury, but which were refused by the court. He then states that three questions are involved in the appeal: "1. Was the trial court justified in refusing certain requested instructions of appellant? 2. Did the trial court misdirect the jury in matters of law? 3. Is the verdict of the jury sustained by the evidence? However, only two of the questions are argued: A portion of the first, the failure to give a proposed cautionary instruction, and the insufficiency of the evidence as stated in the third. While we would be warranted in assuming that the remaining assignments of error have been abandoned (*People* v. *Thompson*, 69 Cal.App.2d 80, 85 [158 P.2d 213]; 8 Cal.Jur. §§ 549-550, pp. 544-546), neverthelss we have carefully examined all of the instructions given and refused and from such an examination conclude that the instructions requested by appellant and refused by the court were either partially erroneous or inapplicable or were substantially embodied in the instructions that were given.

It remains to be seen whether the failure of the trial court to give a cautionary instruction requires a different conclusion. With regard to the action of the trial court in this respect, that is, the failure to give the cautionary instruction proposed by appellant or another appropriate instruction of a similar character phrased in the language of the court itself, it would appear that the sole question thereby presented is whether such failure, under the circumstances disclosed by the record, constitutes reversible error. The right of a defendant in a case of this kind to have a cautionary instruction given to the jury is no longer open to question. (*People* v. *Putnam*, 20 Cal.2d 885, 889-891 [129 P.2d 367]; *People* v. *Lucas*, 16 Cal.2d 178, 182-183 [105 P.2d 102, 130 A.L.R. 1485]; *People* v. *Trumbo*, 60 Cal.App.2d 681, 682-684 [141 P.2d 225]. See, also, *People* v. *Dail*, 22 Cal.2d 642, 655-656 [140 P.2d 828].) However, as the court in the Putnam case observed: "The circumstances of the case must determine whether the failure to instruct the jury constitutes prejudicial error." (*People* v. *Putnam, supra*, at p. 892.) From this it follows that such failure is not error if, as in the Lucas case, the evidence clearly

points to the defendant's guilt, or, as in *People* v. *Fleming,* 58 Cal.App.2d 37, 47-48 [136 P.2d 88], the testimony of the prosecuting witness is amply corroborated, or there are other factors in the case which show that the defendant has been given a fair trial. (*People* v. *Stangler,* 18 Cal.2d 688, 694 [117 P.2d 321].)

Such is the situation in the present case. Here the prosecuting witness, though still a child, was not of such a tender age as to give rise to the inference that her testimony was given without understanding or that she did not comprehend the nature of the acts to which she was testifying (*People* v. *Putnam, supra,* at p. 890; *People* v. *Vicencio,* 71 Cal.App.2d 361 [162 P.2d 650] ; *People* v. *Gallagher,* 108 Cal.App. 128, 132 [291 P. 626]) ; there was no evidences of coaching of the prosecutrix, every indication being that her testimony was the result of actual experience rather than a fancy or figment of her imagination (*People* v. *Stangler, supra,* at p. 694) ; neither is her testimony characterized by such inherent improbability that it cannot be said that the corroborating evidence, even though circumstantial, does not lend plausibility to her testimony (*People* v. *Stangler, supra,* at p. 694). Here the record discloses evidence of corroborating facts and circumstances, such as the physical condition of the victim and of her clothing (*People* v. *Hoyt,* 20 Cal.2d 306, 313 [125 P.2d 29] ; *People* v. *Garner,* 60 Cal.App.2d 63, 66 [140 P.2d 146]), and her direct accusation against her alleged assailant (see *People* v. *Long,* 63 Cal.App.2d 679, 681 [147 P.2d 659]). Moreover, the jury was instructed that the defendant is presumed to be innocent and that his guilt must be established by competent evidence and beyond a reasonable doubt, and the meaning of reasonable doubt was explained by the court. (*People* v. *Lucas, supra,* at p. 183; *People* v. *Fleming, supra,* at p. 48.)

In determining the effect of the failure to give a particular instruction, we cannot be unmindful of the general principle that the sufficiency of a court's charge to the jury depends primarily upon the answer to the question whether, in the light of a fair and reasonable construction and without straining at particular phrases or expressions, it can be said that the charge as a whole adequately, fairly and correctly states the law applicable to the case. (*People* v. *MacPhee,* 26 Cal.App. 218, 221 [146 P. 522].) In the present case the charge amply meets this test.

While appellant was permitted over objection to testify as to a quarrel alleged to have taken place in 1943 between himself on the one half and the mother, sister and stepfather of prosecutrix on the other, as a consequence of which, he stated, he has never since felt friendly toward them, still he made no attempt to show that this feeling was reciprocated. In the light of the trivial nature of the alleged altercation, its remoteness in point of time, and the fact that prosecutrix was permitted to visit his home thereafter, the evidence on this phase of the case would not have warranted the jury in concluding that the testimony of either the prosecutrix or her mother was motivated in any degree by animosity, malice, or a desire for vengeance. (See, *People* v. *Stangler, supra,* at p. 694.)

▮▮ Appellant's final contention is an attack upon the sufficiency of the evidence to show penetration, based entirely upon the homely language used by the prosecutrix in describing the act of sexual intercourse. Not only is the phraseology of the child's testimony unmistakably explicit in this respect when viewed in cold type, but the jury and the trial court must have deemed it sufficiently clear to warrant the verdict rendered; and therefore the question is concluded as far as this appeal is concerned. (*People* v. *Newland,* 15 Cal.2d 678, 681-682 [104 P.2d 778] ; *People* v. *Fleming, supra,* at p. 46.)

In view of all of the circumstances of this case, we are compelled to conclude that appellant had a fair trial, that no prejudicial error was committed, and that there was sufficient evidence to sustain the verdict of the jury and the determination of the trial court.

The judgment and order are affirmed.

Adams, P. J., and Thompson, J., concurred.