[Crim. No. 4419.   Second Dist., Div. One.   Aug. 7, 1950.]

THE PEOPLE, Respondent, v. FLOYD E. SHEVETTE et al., Appellants.

Gladys Towles Root for Appellants.

Fred N. Howser, Attorney General, and Stanford D. Herlick, Deputy Attorney General, for Respondent.

DORAN, J.—In a trial by jury the defendants Floyd E. Shevette, Richard Janeway, Frank M. Williams and Raymond A. Slavens were each convicted of conspiracy to commit forcible rape, of forcible rape and attempted forcible rape, and of violating section 288a of the Penal Code. The defendants' motions to have case referred to the California Youth Authority, and for a new trial, were denied, as was an application for probation. Each defendant was sentenced to the state prison for the term prescribed by law as to each count, the sentences to run concurrently.

The grounds of appeal, as stated in appellants' brief, are that, "I. The Court committed errors of law during the trial of the action. II. The judgment is contrary to the law and to the evidence. III. The evidence is not sufficient to sustain the verdict."

It appears from the record that Patricia McAuley, aged 17 years, complaining witness herein, accompanied by a friend, Lois Wycoff, left the Wycoff home about 7 p. m. on February 9, 1949, and by public conveyance went to the "Roller Center," a skating rink in South Gate, California. The two girls left the rink about 10 :45 p. m. and while waiting for a bus, the four defendants and two other boys drove up in a two-door sedan. The defendant Williams, whom Patricia had known before, asked for a match which Patricia supplied. The girls were then invited to ride home, and upon being told that two of the boys would be dropped off at a hot dog stand, got in the car. Patricia sat on Williams' lap in the back seat; Lois sat on another occupant's lap in the front seat.

The defendant Shevette, who owned the car, was then driving; later, after leaving the two boys at the hot dog stand, the defendant Janeway drove the car in the general direction of the girls' home. Against protests that the girls had to go home the car was driven past the proper street and into a cemetery at 162d Street and Central Avenue. It was then

stated that the car would not start, and it was here that the alleged crimes were committed.

Slaven then suggested that he wanted to have sexual intercourse; Lois refused and Janeway said "that they would beat me up if I didn't do it." Lois Wycoff testified, "I told them I was sick. . . . then Shevette said I would have to prove it," otherwise "they would slap me around." Shevette then accompanied Lois a short distance away, and after being shown proof of menstruation, "He said he was sorry." Miss Wycoff desired to return to the car for the purpose of ascertaining whether the complaining witness was all right but was discouraged from so doing, and was kept at a distance by Shevette until the various assaults had been completed.

Patricia McAuley testified that after Lois had left the car, the defendants Slavens, Williams and Janeway each had intercourse while Patricia was struggling in the back seat; that these defendants kept hitting the complaining witness in the face. Williams and Janeway held the girl's arms and legs while Slavens had intercourse; the other two defendants likewise had intercourse while Patricia was being held. Slavens performed the act twice, and one Berardini, orginally one of the party who had been let out at the hot dog stand earlier in the evening and who had arrived in another car, also had intercourse. In addition to these acts the complaining witness testified that while another defendant was having intercourse, defendants Janeway and Slavens had each copulated with complainant's mouth.

The complaining witness further testified: "I was crying. I said I was going to go to the police as soon as I got home, and he (Williams) said it wouldn't do any good . . . that they would get guys to come into court to testify against me." Upon returning to the car Lois Wycoff found Patricia "kind of crying and biting her lip"; later Lois observed that Pat's face was swollen and black and blue, "She was shaking, her hands were shaking, and she could hardly even talk."

The defendant Shevette drove the car back to Lois' home where the two girls got out. Patricia told Lois what had happened. Patricia then walked a short distance home, arriving there about 2:30 a. m. Mrs. McAuley found Patricia in a crying and hysterical condition. At that time the daughter made no complaint but the next afternoon informed Mrs. McAuley what had occurred at the cemetery. Patricia was examined by a physician the day after the assaults; "She was crying, very nervous, emotionally upset." The examination

revealed tears or breaks in the hymen which "seemed to be not of recent origin"; the relaxed condition of the vagina could "probably, possibly" have resulted from the acts of intercourse which occurred on the preceding day.

A few days after the occurrence, Patricia's mother interviewed the defendant Williams who stated that what Patricia had said about the cemetery episode was true but denied having intercourse; "that he had faked it but had to go through with it to show the other boys that he wasn't a sissy or wasn't going to back out." Williams gave to Mrs. McAuley the names of the other defendants.

At the trial each defendant denied the charges *in toto*, and also introduced character witnesses who testified that the reputation of Patricia McAuley for morality and chastity was bad. Police officers testified to incriminating statements made by the defendants and to admissions that the complaining witness had been forced into the acts of intercourse. There was evidence indicating that the defendant Shevette did not have intercourse with Patricia but kept the other girl from returning to the automobile until the various acts by the other defendants had been completed. Shevette told an officer that "he thought he did" know what was going on in the car; that upon returning to the car Patricia was crying; that Shevette then returned the girls home.

Viewing the evidence most favorably to the convictions, as must be done in criminal appeals, the events related by the prosecuting witness, together with the surrounding circumstances disclosed by the record, must be deemed sufficient to support the judgments herein. In the language of the headnote to *People* v. *Newland*, 15 Cal.2d 678 [104 P.2d 778], "the weight of the evidence is for the jury to determine in the first instance and the trial court after the verdict in the second instance; and if the circumstances reasonably justify the verdict of the jury, an opinion of the reviewing court that those circumstances might also be reconciled with the innocence of the defendant will not warrant interference."

Both in reference to the conspiracy counts and those charging rape and the other offenses involved, the verdicts must be upheld. It is conceded in appellants' brief that the agreement necessary to a criminal conspiracy "need not be formal." As respondent has pointed out, there is evidence that in violation of a promise to take the girls home, "appellants employed trickery to get the girls to the cemetery. There were four men to two girls at all times. . . . Once at the

cemetery, the defendants did not waste time. Their avowed purpose was immediately announced." In reference to Shevette, who had no intercourse with either girl, it is pointed out that this defendant provided the vehicle in which the crimes were committed, and not only allowed these acts to be committed without protest, but prevented Lois from going to the aid of the prosecuting witness. That from first to last Shevette aided and abetted the other defendants cannot well be denied. The existence of a criminal conspiracy and each defendant's participation in the crimes, were questions of fact. It cannot be said that the jury's findings as to these matters are without evidentiary support or contrary to law.

■ "It is appellant's contention that the character testimony as presented by the defense showed that she (Patricia) did not have a good general reputation for morality and chastity," and "proved that, if an act of sexual intercourse occurred on the night in question, it was not a forcible act; it was one with her full consent." But, as pointed out in the respondent's brief, the jury may have felt that the attempt to prove that the bad character of complaining witness lacked conviction, and that the opinions of the character witnesses were predicated upon weak foundation. Again it may be said that such evidence and the inferences to be drawn therefrom, were matters for the jury's consideration.

■ The appellants have attacked the testimony of the complaining witness as "inherently improbable," referring particularly to the latter's statement that while one defendant was having intercourse, another defendant violated section 288a of the Penal Code. But, as was said in *People* v. *Klinkenberg*, 90 Cal.App.2d 608 [204 P.2d 47, 613], "Evidence which discloses circumstances that are unusual cannot be said to be inherently improbable." Again, "A reviewing court cannot reject statements of a witness that have been believed by the trier of facts unless it is a physical impossibility that they be true or their falsity be apparent without resorting to inferences or deductions." Such is the present situation. The jury had before it all the circumstances bearing upon the matter and as respondent's brief points out, "undoubtedly concluded that the . . . offense was not only possible but was in fact perpetrated as related."

■ It is also contended by appellants that the trial court erred in excluding the testimony of a character witness. However, the record discloses that the witness' opinion was not based upon what had been heard but upon something the

witness "personally knew about her." Under such circumstances there was no error in excluding the testimony.

■ Error is likewise predicated upon the trial court's act in permitting the prosecutor to question the defendant Williams concerning a previous arrest. In reference to this matter the trial court stated: "He (Williams) testified to the fact that he had not had any prior record or prior charge. The questions on cross examination were solely for the purpose of testing his credibility on that issue." At stated in *People* v. *Westek*, 31 Cal.2d 469, 476 [190 P.2d 9], "it is proper in a criminal case to cross-examine a defendant upon any relevant and material matter elicited on direct examination, for the purpose of showing conduct or statements inconsistent with his direct testimony. (Pen. Code. § 1323)."

The record herein discloses substantial evidence in support of the jury's findings; no reversible error has been pointed out; each of the defendants apparently received a fair and impartial trial. There is no merit in any of the appellants' contentions.

The judgments are affirmed.

White, P. J., and Drapeau, J., concurred.