[Crim. No. 3041. First Dist., Div. One. Dec. 3, 1954.]

THE PEOPLE, Respondent, v. JOHN WILLIS, Appellant.

Manuel L. Furtado, Newman & Marsh and Robert W. Phillips for Appellant.

Edmund G. Brown, Attorney General, Clarence A. Linn, Assistant Attorney General, and Victor Griffith, Deputy Attorney General, for Respondent.

BRAY, J.—Defendant was convicted by a jury of the following offenses committed on one K. on November 25, 1953: (1) violation of section 288a, Penal Code (oral copulation); (2) violation of section 286, Penal Code (sodomy); (3) violation of section 245, Penal Code (assault with a deadly weapon); and of one offense committed on one E. on November 27, 1953, violation of section 288a, Penal Code (oral copulation). The information charged and defendant admitted two priors, murder and burglary. Defendant appeals from the judgment of conviction and the order denying a new trial.

### Questions Presented

1. Were K. and E. accomplices so that their testimony had to be corroborated?

2. Was the plaintiff's evidence inherently improbable or inconsistent?

3. Effect of failure to give cautionary instruction on court's own motion.

4. Alleged misconduct of district attorney.

EVIDENCE

Only such portions of the revolting details as are necessary to the decision will be given. K., a white sailor on liberty from Treasure Island, testified that about 9:30 p. m. on the Embarcadero he was accosted by defendant, a Negro whom he had never seen before. Defendant asked him if he wanted a girl. K. declined. Thereupon defendant, giving his name as Otto Johnson and displaying what appeared to be a bottle of gin, invited K. to have a drink. K. accepted. Together they entered the Ferry Hotel and went up to the second floor. K. went to the lavatory, defendant following him. Thereafter defendant prevented K. from leaving the lavatory, struck him in the face, pinned him against the wall, placed a small pen knife against his throat and threatened to cut his throat if he failed to comply with his wishes or cried out. Then defendant committed three or four acts of sodomy on K., and two acts of oral copulation, plus masturbation. K. finally turned and struck defendant in the testicles, whereupon defendant stabbed K. in the chest, inflicting a small cut. After K. had dressed, defendant having undressed him in the approximately one and a half hours they were in the lavatory, defendant told K. to get a taxi. Instead, K. got the police. By the time they reached the hotel defendant had disappeared and could not be found in the neighborhood.

Defendant's approach to E, a white soldier, was quite similar. The latter was on the Embarcadero. Defendant, whom he had never seen before, accosted him, asking if he wanted a girl. E. appeared willing. Defendant led him to the Ferry Hotel and when they reached the second floor stated that he must determine before getting him a girl that E. was not diseased, and pushed him into the ladies' rest room. E. wanted to get out but defendant locked the door, and being larger than E., pressed him against the wall. E. was scared and did not consent. Then an act of oral copulation took place. As they left the rest room they met one Betty Alexander to whom E. gave $11. They then went into a room where there was another man. Betty started to remove E.'s clothes. E. had two drinks of whiskey which made him vomit. Betty and the other man left. E. was then lying on the bed. Defendant pressed a nail file or knife against E.'s neck and threatened to cut his throat if he protested. Someone had turned off the light. Defendant attempted sodomy and accomplished oral copulation. Defendant left the room. Several minutes later, E. went into an adjoining room where

he found several children, one man and two women, one of whom was Betty, had a cigarette with them, and left the hotel. Immediately he notified the police.

Both K. and E. subsequently in separate police line-ups of five Negroes identified defendant. Betty Alexander told the police that she met defendant and E. coming down the hall and that defendant told her "You turn a trick with this soldier, and make a little money." Her husband told the officers that he came out in the hall and saw E. and defendant talking to Betty. They all went in a room together. Then Betty and her husband left, leaving defendant and E. in the room. After the arrest defendant told Inspector Kopfer "I had both of the sailors up there at one time," that defendant had seen E. and K. together. Actually neither of these knew the other until after defendant's arrest. Defendant told his parole officer (he was on parole at the time of these offenses) that both K. and E. had propositioned him to engage in perverted sexual practices but he declined.

Defendant testified that on the night of the K. offenses, he was in the 144 Club when K., whom he did not know, walked up and asked him to have a drink. Defendant refused. In a few moments another stranger to defendant bought defendant a drink. This caused K. to become offended. Defendant, seeing that K. was drunk, left the premises and did not see K. again. Mrs. Helen Gaylord, owner of the 144 Club, corroborated defendant in this incident. K. denied being in the 144 Club. Defendant denied being in the Ferry Hotel with K.

As to the night of the E. incident, defendant contends he met E. in the Y.M.C.A. where they had an ordinary conversation. Defendant then left to keep an engagement. Later he saw E. in front of the Ferry Hotel. E. asked him if there were girls in the hotel and followed defendant in. They were stopped by Betty Alexander who asked if they wanted girls. Defendant replied that E. did but that defendant wanted to see a friend of his named Leon Duval. Defendant then went down the hall to a room formerly occupied by Duval. Apparently not finding him in, defendant returned up the hall, and met Alexander. E., Betty, Alexander and he went into a room. Defendant had a drink with E. and Betty. E. became sick and Betty said she would put him to bed. Defendant then left and went to Irwin's Restaurant where he met an ex-convict friend named Ray Manuel. Manuel testified he saw defendant in the restaurant between 9 and

10 p. m. and that the two of them remained in the restaurant until approximately 11:30. Defendant denied being in the room alone with E.

### 1. *Accomplices.*

 Defendant contends that the evidence shows K. and E. to be willing accomplices of defendant and hence that their testimony had to be corroborated under the rule of *People* v. *Robbins,* 171 Cal. 466 [154 P. 317]. However, he overlooks the testimony of both men that they were in great fear; that defendant held either a knife or nail file to their throats and threatened to kill them if they made outcry. K. in fact, showed the police officers evidence of being stabbed. Defendant testified that he never carried a knife and that he only carried a small nail clipper. Therefore, says defendant, the victims' stories could not possibly be true. (He claimed to have had this clipper on his person when arrested. But the evidence of the police officers was to the contrary.) This conflict was one for the jury to resolve. (See *People* v. *Negra,* 208 Cal. 64, 69 [280 P. 354].) ''Where a violation of said section 288a is committed without the consent of the prosecuting witness, it is not necessary that the testimony of such witness be corroborated. (*People* v. *Battilana,* 52 Cal.App.2d 685, 695 [126 P.2d 923].) A person who participates in an act in violation of said section solely because such person has been threatened with, and is in fear of, great bodily harm is not an accomplice.'' (*People* v. *Peterman,* 103 Cal.App.2d 322, 325 [229 P.2d 444].) Section 1111, Penal Code, defines an accomplice as one who may be prosecuted for the identical offense with which defendant is charged. Section 26, subdivision 8, Penal Code, provides that a person is not capable of committing a crime who commits it under threats or menaces sufficient to show that he had reasonable cause to and did believe his life would be endangered if he refused. There is ample evidence here that neither victim willingly consented to defendant's acts and that each reasonably feared his life was in danger if he resisted defendant.

### 2. *Alleged Improbability of Evidence (K. case).*

1. The K. offenses took place in an open toilet of a public hotel between the hours of 9:45 and 11:15 p. m. and yet no one saw or heard them. While there was no door into the toilet room, the offenses took place in cubicles not visible from the hall. Taking into consideration that the hotel is located on the Embarcadero and had prostitutes for tenants,

it is not improbable that no one witnessed the crime, nor if someone did that it would not be reported.

2. Absence of evidence of seminal fluid on the floor. One of the police officers who went to the lavatory that evening testified that because of the "sloppy" condition of the floor, water, paper, cigarette butts and slop covering it, it would have been impossible to tell whether there was semen there, although they did not look for it. Thus, there was no evidence either of its absence or presence.

3. Other claims of improbability and inconsistencies in the testimony in the K. case were that it is improbable that four acts of sodomy could have occurred without K. requiring medical attention; that it is improbable that K. would have punched defendant, who was a professional boxer, in the testicles and in turn have been stabbed by defendant; that although everyone concerned accepted the wound to be a knife wound it actually was inflicted by a fingernail clipper; that K. testified defendant stripped him of his clothes but kept his own overcoat on at all times; that K. could not recall the color of the coat, nor whether it was plain or checked; that K. testified that defendant had a moustache, while when arrested three days later he had none and defendant claims he never had one.

In the E. case it is asserted that E.'s testimony is inconsistent, vague and unreliable in these respects: that he cannot account for a three and a half hour period; that he made inconsistent statements and that his complaints tended to grow progressively more like K.'s; that he was a patient in the psychiatric ward at Letterman Hospital and subsequently given a medical discharge; that he demonstrated a poor memory and a suspicious reluctance to answer questions on cross-examination.

All of these matters in both cases either constituted merely conflicts or went to the weight of the evidence only and were matters for the jury to consider, which they did, adversely to defendant. We cannot say as a matter of law that they made the plaintiff's evidence either improbable or unworthy of belief. "It has been frequently held that a judgment of conviction may not be reversed on the ground that the testimony of a prosecuting witness is inherently improbable unless it is so apparently false and unbelievable that reasonable minds may not differ regarding its falsity. . . . [A]ny apparent inconsistencies go to the weight of the entire evidence and to the credibility of the witness." (*People* v. *Showers,*

90 Cal.App.2d 248, 253, 254 [202 P.2d 814].) Defendant adds that the facts testified to by E. and the surrounding circumstances are much more consistent with defendant's innocence than guilt. Defendant fails to point out any basis for this statement. If the jury believed E., as it undoubtedly did, the facts and circumstances were completely inconsistent with defendant's innocence.

■ "Viewing the evidence most favorably to the convictions, as must be done in criminal appeals, the events related by the prosecuting witness, together with the surrounding circumstances disclosed by the record, must be deemed sufficient to support the judgments herein. In the language of the headnote to *People* v. *Newland*, 15 Cal.2d 678 [104 P.2d 778], 'the weight of the evidence is for the jury to determine in the first instance and the trial court after the verdict in the second instance; and if the circumstances reasonably justify the verdict of the jury, an opinion of the reviewing court that those circumstances might also be reconciled with the innocence of the defendant will not warrant interference.' " (*People* v. *Shevette*, 98 Cal.App.2d 782, 785 [221 P.2d 227].)

### 3. *Cautionary Instruction.*

■ In *People* v. *Nye*, 38 Cal.2d 34 [237 P.2d 1], it was held that the court should give a cautionary instruction to the effect that since charges of sex offenses are easy to make and difficult to disprove the testimony of the prosecution witnesses should be examined with caution, even though, as here, it is not requested by defendant. In the Nye case the court held that the failure to give the instruction was not prejudicial. In that case there is listed one case, *People* v. *Putnam*, 20 Cal.2d 885 [129 P.2d 367], where the instruction was not requested, and three cases, *People* v. *Rankins*, 66 Cal.App.2d 956 [153 P.2d 399]; *People* v. *Trumbo*, 60 Cal.App.2d 681 [141 P.2d 225]; *People* v. *Williams*, 55 Cal. App.2d 696 [131 P.2d 851], where it was requested, in which the failure to give the instruction was held prejudicial. Then there are listed four cases, *People* v. *Lucas*, 16 Cal.2d 178 [105 P.2d 102, 130 A.L.R. 1485]; *People* v. *Owsley*, 76 Cal.App.2d 166 [172 P.2d 561]; *People* v. *Finkel*, 70 Cal. App.2d 508 [161 P.2d 298]; *People* v. *Mummert*, 57 Cal. App.2d 849 [135 P.2d 665], where the instruction was requested, and two cases, *People* v. *Fleming*, 58 Cal.App.2d 37 [136 P.2d 88], and *People* v. *Meyers*, 62 Cal.App.2d 24 [144

P.2d 60], in which it was not requested, where it was held not prejudicial to fail to give the instruction. Thus, it is not necessarily prejudicial error to fail to give the instruction, the circumstances of each case being the determining factor. (The instruction ought, however, to be given in cases of this kind instead of taking the chance that its omission might be prejudicial. The work of reviewing courts would be considerably lessened if trial courts would perform their duty in this respect.) In the present case, having in mind the testimony of K. and E., the similarity of the offenses, the fact that Betty and Curtis Alexander, tenants of the hotel, identified defendant as the man they saw in the hotel at different times, once with a sailor, once with a soldier, defendant's denial of being in the hotel with K., the fact that defendant told Inspector Kopfer that he had E. and K. in the hotel at the same time, and the defendant's own version of the E. episode, we must conclude that the failure to give the cautionary instruction was without prejudice. As said in *People* v. *Nye, supra,* 38 Cal.2d 34, 41: "A careful examination of the entire record in accord with article VI, section 4½ of the California Constitution, leads us to the conclusion that it is improbable that the jury would have rejected the testimony of the prosecuting witnesses had a cautionary instruction been given and that there has therefore been no miscarriage of justice requiring reversal of the judgment." .

4. *Alleged Misconduct.*

The evidence showed that defendant was on parole from Folsom. The district attorney asked defendant, "Several of the inmates in Folsom complained that you had forcedly sexually abused them, didn't they?" Defendant immediately objected and asked that not only "the objection be sustained, but that counsel be admonished not to bring any prejudicial stuff which may or may not be true." The court immediately sustained an objection to the question, saying "and I think the jury should be admonished." Then defense counsel stated, "Let's ask those questions about the complaining witnesses." The court said, "Well, disregard that question."

Defendant did not request that the jury be admonished. He merely requested that counsel be admonished "not to bring any prejudicial stuff . . ." Assuming the question to be improper, the language in *People* v. *Kristy,* 111 Cal.App.2d

695 [245 P.2d 547], is applicable here (pp. 712-713): "In the light of the circumstances under which the challenged misconduct of the district attorney occurred, we cannot say that the effect of such misconduct could not be overcome or removed by appropriate instructions to the jury. The authorities are uniform that under such circumstances, in the absence of proper request for the court to instruct the jury to disregard such misconduct, it may not be reviewed on appeal [citations]." Assuming however, such a request to have been made, and while we do not condone such conduct on the part of the district attorney, we feel that under the circumstances of this case no prejudicial harm was done. As said in *People* v. *Kristy, supra,* 111 Cal.App.2d 695, 713: "While the ruling was possibly not as emphatic as might be desired under the circumstances, nevertheless, since it was given immediately following the sustaining of an objection to the first challenged question involving a charge of misconduct by the district attorney, it cannot be said that it was not sufficiently definite for the purpose of advising the jury that the question that had just been asked as well as the subsequent interrogatories were to be disregarded by them. We are impressed that in view of the overwhelming evidence of appellant's guilt, the jury's verdict would not have been different had the questions not been asked (Const., Cal., art. VI, § 4½)."

The judgment and order are affirmed.

Peters, P. J., and Wood (Fred B.), J., concurred.