[Crim. No. 2368.   Third Dist.   Mar. 5, 1953.]

THE PEOPLE, Respondent, v. WILLIAM CARTER, Appellant.

534

Kenneth Cayocca for Appellant.

Edmund G. Brown, Attorney General, Doris H. Maier and Leo V. McInnis, Deputy Attorneys General, for Respondent.

SCHOTTKY, J.—This is an appeal from a judgment of conviction on two counts of forgery and from the order denying a motion for a new trial.

William Carter was charged by information with three counts of forgery. Count No. 1 charged that defendant did, on September 18, 1951, feloniously and with intent to defraud Robert Jordon and the Anglo California National Bank at Sacramento, California, draw a forged instrument, namely a nonnegotiable commercial account counter check in the amount of $700, and uttered and attempted to pass the same to LaRayne Hoover and Ralph Lane as true and genuine, knowing the same to be altered and forged. Count No. 2 charged that defendant did, on September 26, 1951, feloniously and with intent to defraud Harold Lee Janes and the Bank of America National Trust and Savings Association at Sacramento, California, draw a forged instrument, namely a nonnegotiable counter receipt in the amount of $73, and uttered and attempted to pass the same to Joseph Perez, as true and genuine, knowing the same to be altered and forged. Count No. 3 charged that defendant did, on September 29, 1951, feloniously and with intent to defraud Harold E. Walton and the Bank of America National Trust and

Savings Association at Sacramento, California, draw a forged instrument, namely a check in the amount of $26.70, and uttered and attempted to pass the same to John W. Boyles as true and genuine, knowing the same to be altered and forged. The defendant entered a plea of not guilty to all three counts.

At the trial before a jury, the People called one John W. Boyles, the owner of a bottle shop, to testify as to count No. 3. He identified appellant as the person who on September 29, 1951, presented a check in the amount of $26.70, drawn on the Bank of America, Sacramento, California, the drawer thereon appearing as Harold E. Walton, and the payee Thomas W. Jordan, the name of the payee being endorsed on the back. The check was offered to purchase a bottle of whiskey and some cigarettes. Boyles had cashed a check under the same name earlier in the day, so he questioned defendant as to whether he had cashed a check earlier; when defendant replied in the negative, Boyles told him to sit down while the police were called, but defendant left while the call was being made. This testimony was given at the close of the first day's proceedings. At that time the prosecutor stated that he was then unable to present Harold Walton, the alleged drawer of the check, but that Walton would testify the following morning. The assistant public defender, who was representing defendant, indicated that the defense had no objection to this continuance. The following morning, January 4, 1952, the prosecution stated in open court that due to circumstances beyond their control they had been unable to secure the material witness Harold Walton and therefore requested that the third count be dismissed. Upon defense counsel's acquiescence and statement that he had no objection, dismissal of that count was ordered.

The testimony as to count 1 was to the effect that appellant, on or about September 18, 1951, presented a $700 commercial account counter check signed by Robert Jordon for payment at the teller's window of LaRayne Hoover in the Anglo California National Bank in Sacramento, California. The teller handed the check to Ralph Lane, the assistant cashier, who found no funds in the bank for the check and so informed defendant; defendant then stated that he kept his funds in the Fruitridge Branch of the bank, whereupon Lane said he would call there to verify the deposit, but before the call could be completed, defendant departed from the bank, leaving the check. The testimony of Robert Jordon was that he operated

an automatic car washer and that defendant had worked for him for a few days during the month of September. However, Jordon did not write the check in question, nor had he authorized anyone else, including defendant, to write it.

The testimony as to count 2 was to the effect that on or about September 26, 1951, appellant presented for payment a counter check signed by Harold Lee Janes, dated September 26, 1951, in the amount of $98, to Joseph Perez, teller at the Bank of America, Sixth and K Streets, Sacramento, California. Perez checked the bank records and found that the account had insufficient funds to cover that amount and he so advised defendant. Defendant then took the $98 check back, went to the counter and made out another one in the amount of $73 which was cashed. Harold Lee Janes testified that he had not given anyone, including defendant William Carter, authority to write the check, nor had he written it himself.

The appellant took the stand in his own defense and testified with reference to the first count that he was at the Stag Pool Hall during the time he allegedly tried to pass the $700 check on September 18, 1951, and, as to the second count, that he had been in San Francisco on September 26, 1951. He further testified that he had not seen any of the checks before, that it was not his handwriting appearing thereon, that he had furnished samples of his handwriting to the detectives, and that he did not even know where the Anglo California National Bank was. Appellant was impeached by proof of a prior felony conviction for robbery.

█ Appellant first contends that the trial court erred in sustaining an objection to cross-examination of the witness Ralph Lane, assistant cashier of the Anglo California National Bank, as to a conversation he had with the police department. Appellant in his brief sets forth the following testimony:

"Q. Where were you at that time, at the bank, when you were called to come over and identify the defendant? A. Yes.

"Q. What did they say to you when they told you to come over?

"Mr. Cole: Objected to as calling for hearsay, your Honor.

"The Court: That is right."

Appellant argues that this question was asked by the defense attorney for the purpose of bringing out to the jury the fact that the observation made by Ralph Lane at the time

that the defendant was alleged to have passed this counter check was inaccurate and any conversation had with the police department at that time would affect the credibility of the witness as to just how much he remembered of the defendant's characteristics and would tend to prove that the reason he was able to identify this defendant was in some degree due to what was told him over the telephone at that time. However, appellant does not set forth the testimony immediately following the portion quoted by him. This was as follows:

"MR. KLINE: Q. With whom did you talk? A. Walter Lapp.

"Q. Did Mr. Lapp ask you to come over to the jail?

"MR. COLE: Objected to as calling for hearsay.

"THE COURT: Overruled. It goes to show interest and so forth. A. He asked me to come over there, to, I believe it was the Sheriff's office, over on Sixth Street, the Hall of Justice.

"Q. At the Sheriff's office, and who was there at that time? A. Mr. Lapp, some other police officers that I didn't know.

"Q. Did they bring some people in for you to identify? A. They brought this fellow in to the office and asked me if that is the man that presented the check for $700.00 and I said it was.

"Q. This is the only man you looked at? A. Yes, sir."

It is clear that the later ruling of the court permitted appellant to go into the conversation of the officer with the witness prior to the identification, and no prejudice could have resulted to appellant from the ruling complained of.

Appellant's second contention is that the court erred in admitting testimony as to appellant having first offered a counter check for $98 shortly before presenting the check for $73 which was cashed and which was the basis of the offense charged in count No. 2. Appellant's counsel objected to this testimony from the bank teller, Joseph Perez, on the ground that there was nothing charged in the information as to such check. The court ruled that it was admissible as a part of the res gestae when it was shown that the $98 check had been presented within three minutes prior to the presentation of the counter check for $73, which latter was the check cashed by Perez. Appellant argues that the transaction involving the $98 instrument was separate and apart from that involving the second check for $73. However, as pointed out by respondent, the case relied upon by appellant, *Wagner v. Worrell*, 76 Cal.App.2d 172 [172 P.2d 751], involved a lapse of 25 days, whereas here, the sequence of events took place within three minutes and there is no indication from the

testimony that appellant went outside the bank premises between the offering of the first and second checks.

There was no error in the court's ruling as the offered evidence was clearly part of the res gestae. ▉ As this court said in *People* v. *Fong Sing*, 38 Cal.App. 253, at page 258 [175 P. 911]:

"The doctrine of *res gestae* is so well understood that it is hardly necessary to remark that under that rule evidence is admissible of extrajudicial declarations tending to explain or show the character or motive or purpose or intent of a transaction, itself a fact in dispute, which would under other or ordinary circumstances be excluded as hearsay or self-serving. The rule, in other words, recognizes the competency of certain hearsay testimony, and is an exception to the general rule of exclusion as to that class of proof. Our Code of Civil Procedure, section 1850, thus states the rule: 'Where, also, the declaration, act, or omission forms part of a transaction, which is itself the fact in dispute, or evidence of that fact, such declaration, act, or omission is evidence, as part of the transaction.'"

Appellant next contends that the district attorney committed prejudicial error during the course of his arguments to the jury.

He first states that although there was no evidence offered on behalf of the people that appellant had actually written the forged checks, and although no handwriting experts testified or in any way identified appellant's handwriting as to any of the three counts originally charged, the district attorney, in his final argument, undertook to give reasons why this evidence was not offered, by commenting that a person who commits forgery by writing with both hands is hard to detect. Appellant submits he was thereby deprived of a fair trial because the prosecution deliberately tried to prejudice the jury through use of matters not in the record.

▉ There was, however, the testimony of the teller, Perez, that appellant had written one of the checks, and we cannot say that the argument of the district attorney went beyond the bounds of legitimate argument, for as stated in *People* v. *Willard*, 150 Cal. 543, at 552 [89 P. 124]: "Counsel have a right to present to the jury their views of the proper deductions or inferences which the facts warrant. Their reasoning may be faulty, their deductions from the premises illogical, but this is a matter for the jury ultimately to de-

termine, and not a subject for exception on the part of opposing counsel." See, also, *People* v. *Eggers,* 30 Cal.2d 676, 693 [185 P.2d 1]. Furthermore, the trial court, when objection was made by appellant's counsel, stated: "This is just a theory on the thing and I will permit him to point out his theory and the jury will be instructed that they will take the evidence from the witnesses and from the witnesses only."

■ Appellant contends also that the district attorney was guilty of prejudicial misconduct resulting in a miscarriage of justice in making the following statement in his argument to the jury. "How he planned to get away with the $700 check; how anybody could be that stupid, I don't know, only Mr. Carter knows that."

Respondent first counters by saying that the record does not indicate any objection to this remark by defense counsel, and that the issue cannot be raised for the first time on appeal, since timely objection would have permitted the trial court to properly admonish the jury. Respondent then defends the propriety of the statement by citing two cases, *People* v. *Kromphold,* 172 Cal. 512 [157 P. 599], and *People* v. *Vickroy,* 41 Cal.App. 275 [182 P. 764], where far stronger language was held to not constitute misconduct.

The third instance of prejudicial misconduct urged by appellant is that the district attorney in his argument commented on the fact that appellant did not call a witness to prove his whereabouts on September 26, 1951, the date of the offense charged in count No. 2 of the information, and by implying that this failure to substantiate his alibi should be held against him. The record shows that appellant had testified that he was in San Francisco on September 26, 1951, from 9 a. m. to 5 p. m., but he produced no witnesses who had seen him there that day.

There is no merit in this contention of appellant. ■■ As this court said in *People* v. *Fitzgerald,* 14 Cal.App.2d 180, at page 205 [58 P.2d 718] : "It is undoubtedly the rule that the district attorney may comment upon the failure of the defendant to produce material witnesses who would substantiate his story. (*People* v. *Piero,* 79 Cal.App. 357 [249 P. 541].) It is not misconduct for the district attorney to refer in his argument to the fact that a codefendant was not called upon to testify on behalf of the defendant. (*People* v. *Yee Foo,* 4 Cal.App. 730 [89 P. 450]; *People* v. *Ruef,* 14 Cal.App. 576 [114 P. 48, 54, 72].)" See, also, *People* v.

*Gist,* 28 Cal.App.2d 287, 292 [82 P.2d 501] ; *People* v. *Piero,* 79 Cal.App. 357, 360 [249 P. 541].

■ Appellant next contends that he was deprived of a ''fair trial'' and ''due process of the law'' by the consolidation of count No. 3 of the information with the other two counts. Appellant argues that the prosecution knew all along that the third count would be dismissed prior to completion of the People's case, but as a matter of strategy put on as much of the evidence as they could to present to the jury as un-favorable a picture of appellant as possible, thereby using count No. 3 only to strengthen the weak points in the first two counts. There is no merit in this contention. The tran-script shows that the prosecution planned to have the ma-terial witness Harold Walton present on the following day, but that he could not be located. The fact that a material witness cannot be found and therefore one of the counts is dismissed does not compel a conclusion that there was a plan to prejudice the defendant. Furthermore, the record shows that defense counsel was questioned and indicated he had no objection to the dismissal of the third count.

Appellant's final contention is that the proof offered by the people as to the first two counts was not sufficient to justify a conviction as to those counts. As to the first count, appellant contends the identification by Ralph Lane was very vague because he testified that there was nothing outstanding about appellant, that there was nothing about appellant's face which caused him to identify appellant, that he noticed no identification marks, that he did not talk to appellant when making the identification at police headquarters, that he was not called to identify the appellant until several weeks after the offense, and that he was only shown appellant and no one else. As to the second count, appellant points to Perez' testimony that he paid no attention to what appellant was wearing, that he believed appellant had a mustache but did not know for sure, and that to the best of his knowledge he thought appellant was the man. This identification, too, is attacked as too vague and uncertain; appellant urges that the jury must have improperly considered the testimony of Boyles, the bottle shop owner who was called in connection with the third count, in accepting the identification of appel-lant as to the first two counts and reaching their verdict thereon. However, as pointed out by respondent, identifica-tion is a matter for jury determination, and the record shows that the identification of appellant by both Lane and Perez

at the trial was without qualification. ▐ Any want of positiveness would go only to the weight of the testimony and the question was one for the jury to determine.

In view of the foregoing we conclude that the appellant received a fair and impartial trial, that the evidence abundantly supports the judgment of conviction, and that no prejudicial error was committed.

The judgment and the order denying the motion for a new trial are affirmed.

Van Dyke, P. J., and Peek, J., concurred.