[Crim. No. 3145. Third Dist. May 16, 1961.]

THE PEOPLE, Respondent, v. OSCAR WHIPPLE, Appellant.

Jack M. McPherson for Appellant.

Stanley Mosk, Attorney General, Doris H. Maier, Assistant Attorney General, and Nat A. Agliano, Deputy Attorney General, for Respondent.

SCHOTTKY, J.—Oscar Whipple was found guilty by a jury of a violation of section 266h of the Penal Code (pimping). He was acquitted of a second count. Thereafter he made a motion in arrest of judgment and a motion for a new trial. Both were denied. The matter was referred to the probation officer, and following the filing of his report, the court ordered that probation be granted and that the imposition of sentence be suspended. Defendant appealed from the order denying the motions in arrest of judgment and for a new trial and from the order granting probation.

An order denying a motion in arrest of judgment is not an appealable order (*People* v. *Bechtel*, 41 Cal.2d 441 [260 P.2d 31]), and while it may be reviewed on an appeal, a purported appeal from such an order must be dismissed. (*People* v. *McNamara*, 103 Cal.App.2d 729 [230 P.2d 411].)

Appellant does not contend that the evidence is insufficient to sustain the verdict of the jury and order but contends that because of the asserted misconduct of the district attorney,

the failure of the court to give a cautionary instruction, and errors in the admission of evidence the appellant did not have a fair trial. Before discussing these contentions, we shall give a brief summary of the evidence as shown by the record.

On the evening of November 21, 1959, Chester Brune, a farm worker, entered a cab in the city of Oroville and requested that he be taken to the home of his boss, Adolpho Rodriguez. According to Brune, there was a woman sitting in the front seat next to the driver. Near the destination the cab driver allegedly drove the taxicab to the side of the road and stopped and asked Brune, "Well, are you going to pay for it now." Brune allegedly did not understand, and the driver then said, "Pay $20 for this woman." Brune then left the car and entered the Rodriguez residence where he related the incident. Brune was unable to identify the driver or the woman, but he did notice that the driver had grey hair.

After being notified of the incident, Officer Spinale of the Oroville Police Department interviewed Brune. It was determined that there was not sufficient evidence to make an arrest. Brune, after leaving the police station, saw appellant about to enter a Star taxicab. He noticed that appellant had grey hair, and he thought appellant might be the cab driver. He approached appellant and apologized for not paying his fare and for getting angry. Appellant acted as if he did not know what Brune was talking about. Brune then told appellant that he was the boss of certain farm workers at the olive grove and that he wanted to get some women for his men. According to Brune, appellant gave him a card of the cab company on which the number "3" was written on the reverse side and told Brune to call the number on the face and ask for Oscar. Brune took the card and returned to the police station. He informed Officer Spinale of the conversation and then identified appellant's picture from a group as that of the man who had given him the card. Later in the evening Brune was given a marked five-dollar bill. Brune then phoned the Star Cab Company and asked for appellant. Later in the evening appellant and Brune met at the Liberty Club, where, according to Brune, he asked appellant to get a woman. Appellant left the Liberty Club and later met Brune in front of the club. A Jessie Petrovich was with appellant. Appellant said, "[H]ere she is." According to Brune, Jessie asked the number of men, their race, and the sanitary facilities at the labor camp. She also told him the price would

be $10. After a short interval the three entered appellant's cab and drove to the labor camp. When they arrived Brune allegedly gave appellant the marked five-dollar bill and then left the cab to see what he could arrange.

Officer Spinale had followed appellant's cab. He went up to appellant and told him to give him the five-dollar bill. Appellant allegedly told the officer, "You mean the $5 he gave me? Well, I haven't given him his change yet." Jessie Petrovich said, "He didn't get $5." Both appellant and Jessie Petrovich were taken to the police station where they were searched. The five-dollar bill was never found, but a syringe and a sponge were found in Jessie Petrovich's purse.

There was evidence from which it could be inferred Jessie Petrovich was a prostitute.

On January 22, 1960, Brune phoned Albert King, who was at the time appellant's counsel, and told him that he needed money. Brune asked King what the consequences would be if he left the state and did not appear as a witness. As a result of this call, appellant went to Sacramento. According to Brune, there was a discussion in which appellant told Brune that if the trial went appellant's way he would give him some money. Brune testified that he understood that he was to change his story and testify favorably for appellant.

There was also testimony that around the 20th of January appellant had placed $1,000 with the owner of the Liberty Bar for safekeeping and that appellant returned in a couple of hours for the money and mentioned that he was going to Sacramento and find Brune.

Appellant denied the charge. He testified that he first met Brune in the Liberty Bar on November 23d; that they discussed the matter of transporting men to Sacramento; that at the conclusion of the discussion Brune asked appellant if he could get the men at the labor camp some women; that Brune was told no; that later in the evening he saw Brune and again refused to get women for him; that he met Jessie Petrovich in a bar and that she told him that she wanted a ride to her home; that after an interval he found Brune and Jessie Petrovich in the same bar; that they both entered his cab to go to their respective homes. Both Jessie Petrovich and appellant denied that there was any conversation concerning prostitution. Both denied that Brune gave appellant a five-dollar bill. Appellant contended that his sole purpose in going to Sacramento was to secure information from Brune

which might aid his defense. He further testified that he did not place the $1,000 in the safe until February 3d.

Appellant's first contention is that the district attorney was guilty of misconduct. Prior to the trial the defense allegedly contacted one Ray Hutton who purportedly was prepared to testify that on the evening of November 23d Brune came into the ranch house and hurriedly gave him a five-dollar bill which Hutton later used to purchase gas at a service station run by one Shaw. In his opening statement defense counsel stated he would prove the foregoing. Hutton was subpoenaed but failed to appear. A bench warrant was issued but Hutton could not be located. In his opening argument to the jury the district attorney commented about the missing witness as follows: "And then there is another matter silent in the record about the, and I would invite counsel's comment about this, this missing witness Ray Hutton and unless my ears failed me, there was supposed, there was to be a chain of evidence, didn't he get the five dollar bill from Brune and run down and spend it at Shaw's 76 Service Station, something about that. Is there any evidence . . . ."

An objection was interposed at this point and the district attorney said that his comment was directed at the failure to produce Shaw. This was evasive. The reference could only have been to Hutton. Nevertheless, it was proper for the district attorney to comment on the failure of the defense to call witnesses to substantiate statements made in defense counsel's opening statement. (*People* v. *Gist,* 28 Cal.App.2d 287 [82 P.2d 501]; *People* v. *Carter,* 116 Cal.App.2d 533 [253 P.2d 1016].) The jury did not have to believe that if called Hutton would have testified as he had told defense counsel he would. The jury could have believed he had misinformed defense counsel and hence feared to take the stand.

 Appellant also contends that the district attorney was guilty of misconduct in permitting the owner of the Liberty Bar to testify that appellant had given him $1,000 to place in his safe about January 20th and that appellant had taken the money later to take to Sacramento to find Brune and "do himself some good." The district attorney argued that this testimony showed consciousness of guilt. Appellant argues that bad faith existed because in the trial of Brune for violating section 138 of the Penal Code (offers to receive a bribe on the part of a witness), which followed the instant trial, the testimony showed that the money was received by appellant on February 3d and placed in the safe on the same

day, which was later than the date of the trip. There is no merit in this contention of appellant for several reasons. The district attorney had a right to refer to the testimony and draw legitimate inferences from it. The fact that the evidence at the trial of Brune was different than in the instant case was something for the trial court's consideration on the motion for a new trial. It does not compel a conclusion of bad faith.

Appellant contends further that error occurred when during his cross-examination the district attorney asked appellant if a Bill Evans used to drive for him, and after receiving an affirmative answer, asked, "And he has a criminal record, does he not, you know that?" The district attorney said the purpose of the question was to identify Evans. The question was improper, but we do not believe it was prejudicial. Evans later testified for the prosecution that appellant had brought a man to a home which Evans shared with a June Whitehead, and appellant had told her he had a man to see her. She assertedly said to get the man out of the house, and appellant said, "Well, there is a $50 bill in it." The fact that Evans had a criminal record would be considered by the jury in evaluating his testimony.

Appellant also contends that it was error for the district attorney in his cross-examination of appellant to ask if he took the man who had been at the Evans house to Cadillac Flats, an area where persons of the colored race reside. The district attorney also asked whether that was the area where the colored people had their night clubs and late parties. Appellant contends that the purpose of the questions was to show appellant drove the passenger there for immoral purposes. It does not appear that any objection was made to the questions at the trial, and appellant is therefore in no position to urge this contention on appeal.

Appellant contends further that the trial court erred in admitting evidence of other crimes. On direct examination appellant testified that when Brune asked him to get some women he replied, ". . . I don't know any woman in this town and besides that isn't my business, I am having a tough enough struggle in this cab business as it is." On cross-examination appellant was asked, "In other words you have never tried to get girls for men in your business?" An objection was interposed. The answer was, "I never have." Then appellant was asked if he knew an Edna Burrow,

whether he had offered her a proposition, and whether he had asked a Johnny Goin to talk to Edna and have her change her story.

On rebuttal Edna Burrow testified that in August, 1959, while riding in appellant's cab, he asked her whether she would like to make some money by going out with men, and that at a later date he introduced her to a man and asked her if she were willing to make $20. There was additional rebuttal testimony to the same effect.

As a general rule evidence of other offenses committed by a defendant in a criminal case is inadmissible unless it is relevant for some purpose other than to show a disposition to commit a crime. (Witkin, California Evidence, § 135.) The most common exception is to show motive, intent, plan or knowledge. There is also another exception.

" 'The accused may not overemphasize his claims of utter innocency by saying that he *never at any time* committed an offense of the kind on trial. . . . Having chosen to extend the scope of the inquiry by a resort to superlatives, the accused must expect to be met with contrary proof.' " (Witkin, California Evidence, § 679. The quotation is from *People v. Lindsey,* 90 Cal.App.2d 558, 566 [203 P.2d 572].)

We believe that appellant's testimony on direct examination that he did not know any women in town, and besides it was not his business, was a statement as to his good conduct in the past which the prosecution could rebut according to the rule cited.

The most serious contention of appellant is that the court erred in not giving a cautionary instruction. Appellant relies heavily on *People v. McGhee,* 123 Cal.App.2d 542 [266 P.2d 874], a case in which the charge was pimping, and the court said a cautionary instruction to the effect that a charge of this character is easy to make and difficult to disprove because the complaining witness and the defendant are usually the only witnesses, and therefore the jury should examine the testimony of the complaining witness with caution, should be given in a case charging pimping. The court gave three reasons why such an instruction should be given, particularly where the complaining witness' testimony is uncorroborated. The reasons given were, (1) the fact that the complaining witness and the defendant are the only ones who can provide direct testimony, hence the charge is easy to make; (2) cases involving sex crimes arouse the passion and prejudice of decent people; (3) the ease with which the charge can be

made to satisfy spite and vindictiveness. In reversing the judgment the court pointed out that all of the foregoing elements were present and stated further: ". . . Add to this the fact that the complaining witness was a minor, that she was white and appellant and most of the customers, according to her testimony, were Negroes, and the inflammatory tendency of her testimony is by that much more increased. (3) The possibility of spite and revenge is suggested by appellant's testimony that he ejected the complaining witness and her pseudo-husband from his hotel."

In affirming the judgment in *People* v. *Nye*, 38 Cal.2d 34 [237 P.2d 1], a rape case, in which the trial court failed to give a cautionary instruction, the Supreme Court said at page 40:

"The circumstances of each case determine whether failure to give the instruction was prejudicial. In the cases in which judgments were reversed for failure to give the instruction, it was not improbable that the jury would have returned a different verdict had the cautionary instruction been given. In *People* v. *Putnam*, 20 Cal.2d 885 [129 P.2d 367], the evidence against the defendant consisted primarily of the testimony of a 12-year-old boy. The boy's testimony was inconsistent, and the acts of defendant were circumscribed. In *People* v. *Rankins*, 66 Cal.App.2d 956 [153 P.2d 399], the defendant was convicted of statutory rape and incest on the uncorroborated testimony of his 16-year-old daughter. The girl's testimony was inconsistent, and other evidence indicated that motives of spite might have led to her accusation. In *People* v. *Trumbo*, 60 Cal.App.2d 681 [141 P.2d 225], a conviction for lewd conduct with a child was based on inconsistent testimony of two young girls. The parents of the girls corroborated their testimony, but the court held that under all the circumstances failure to give a cautionary instruction was reversible error. In *People* v. *Williams*, 55 Cal.App.2d 696 [131 P.2d 851], the prosecutrix was a mature woman, and the offense charged was forcible rape. Circumstantial evidence indicated that the prosecutrix had consented to the intercourse, and, again, refusal to give a cautionary instruction was held to be prejudicial.

"Under the circumstances of several other cases, failure to give a cautionary instruction was not prejudicial. In *People* v. *Lucas*, 16 Cal.2d 178 [105 P.2d 102, 130 A.L.R. 1485], this court held that the trial court should have given the instruction, but affirmed the judgment since the record clearly pointed

to the defendant's guilt. The same result has been reached when there was evidence of corroborating facts and circumstances, and the unequivocal nature of the defendant's acts could leave no doubt as to his purpose. [Citing cases.]''

While we believe that the failure to give the classic precautionary instruction was error, we do not believe that such error requires a reversal of the judgment. The evidence in the instant case points much more strongly toward the guilt of the appellant than did the evidence in the McGhee case. The testimony of Officers Spinale and McElheney and the other evidence hereinbefore referred to, together with the fact that Jessie Petrovich was a prostitute and was introduced to Brune by appellant, was corroboration of the testimony of Brune.

We conclude, as the Supreme Court concluded in *People* v. *Nye, supra,* that a ''careful examination of the entire record in accord with article VI, section 4½ of the California Constitution, leads us to the conclusion that it is improbable that the jury would have rejected the testimony of the prosecuting witnesses had a cautionary instruction been given and that there has therefore been no miscarriage of justice requiring reversal of the judgment.''

The orders are affirmed. The appeal from the order denying the motion in arrest of judgment is dismissed.

Van Dyke, P. J., and Peek, J., concurred.