[Crim. No. 1825.   Third Dist.   Sept. 30, 1943.]

THE PEOPLE, Respondent, v. LELAND H. TRUMBO, Appellant.

J. Oscar Goldstein and Burton J. Goldstein for Appellant.

Robert W. Kenny, Attorney General, and T. G. Negrich, Deputy Attorney General, for Respondent.

PEEK, J.—The defendant appeals from a judgment wherein he was found guilty on one of three counts in an

indictment charging violation of section 288 of the Penal Code. To each of the three counts he entered a plea of not guilty. At the conclusion of the trial the jury returned its verdict of guilty on count 1, not guilty on count 2, but hopelessly disagreed as to count 3. Thereafter on motion of the district attorney, count 3 of the indictment was dismissed. It is from the verdict of the jury and the judgment thereon by the court, as well as from the order of the court denying defendant's motion for a new trial, that this appeal is prosecuted.

Defendant alleges five grounds of error as the basis of his appeal. The first being that the court committed prejudicial error in advising the jurors that he wished they would agree upon a verdict in the case. Second, that error was committed by the court in the giving and failing to give certain instructions, in particular a so-called cautionary instruction. Third, that the verdict is unsupported by the evidence, and that the evidence of the prosecuting witness is so inherently improbable as to challenge one's credulity. Fourth, that the evidence of the prosecuting witness and that of the youthful eyewitness to the acts alleged to have been committed by appellant was unworthy of belief, obviously false, and as a matter of law failed to sustain the conviction of the defendant on count 1, and lastly, that the case as a whole, by reason of erroneous rulings of the trial court in its failure to instruct the jury properly regarding the law of the case, the highly unsatisfactory and improbable testimony of the witnesses and the conviction of the defendant, resulted in a miscarriage of justice.

The defendant, at the outset, strenuously urged that he was at a disadvantage, not alone because of the kind of offense alleged to have been committed but also because it was admitted that the minor child involved had a venereal disease which was claimed by the prosecution to have been transmitted to her by him. In the early case of *People* v. *Benson*, 6 Cal. 221 [65 Am.Dec. 506], wherein the defendant was charged with rape, a crime not wholly unlike the one charged in the present case, the court stated: ''There is no class of prosecutions attended with so much danger, or which afford so ample an opportunity for the free play of malice and private vengeance.'' Under such circumstances it is only proper and just that the defendant is entitled to the benefit

of every right and privilege granted him by virtue of the laws of this state to the end that he be not convicted unjustly of such a crime.

There is considerable merit in the contentions made by defendant, but to review exhaustively all of the issues raised would appear to be immaterial in view of the disposition made herein of defendant's second count of alleged error, the failure of the trial court to give a proper cautionary instruction. Two instructions were requested, one was given and one was refused. The first one requested was that:

"A charge of this nature is particularly difficult for defendant to clear himself of. No charge can be more easily made, and none more difficult to disprove. In the nature of the case, complaining witness and defendant are generally the only witnesses who can testify as to the existence or nonexistence of the facts in issue. Unless you are satisfied to a moral certainty and beyond all reasonable doubt that the defendant is guilty, it is your duty to find a verdict in favor of the defendant." This was refused, and instead the court gave defendant's instruction Number 21, as follows:

"The testimony of a child of tender years, such as the prosecuting witness here, ought to be viewed with care and caution, and the evidence in a case of this kind is to be weighed by you with the utmost care without bias or prejudice."

Cautionary instructions had their inception in the oftquoted remark of Sir Matthew Hale, that rape is "an accusation easily to be made and hard to be proved, and harder to be defended by the party accused, though never so innocent." (1 Pleas of the Crown, 634.) The case of *People* v. *Putnam,* 20 Cal.2d 885 [129 P.2d 367], added the further observation that, "The rule permitting a conviction on the uncorroborated testimony of the prosecuting witness is necessary to protect the public but it needs a counterweight to protect the accused. It also has been observed "that, notwithstanding the salutary rule that an accused is presumed to be innocent until his guilt has been established beyond a reasonable doubt, nevertheless, to the mind of the average citizen or juror, the mere fact that a person has been accused of the commission of such an offense seems to constitute sufficient evidence to warrant a verdict of 'guilty'; and that—instead of its being necessary for the prosecution to prove his guilt beyond a reasonable doubt—in order to secure an

acquittal of the charge, it becomes incumbent upon the accused to completely establish his innocence, and to accomplish that result not only by a preponderance of the evidence but beyond a reasonable doubt.'' (*People* v. *Adams,* 14 Cal. 2d 154, 167 [93 P.2d 146].)

Respondent, however, argues that when the testimony of a complaining witness is corroborated by another, the defendant is not entitled to a cautionary instruction, and cites as authority for such statement the case of *People* v. *Roberts,* 50 Cal.App.2d 558 [123 P.2d 628]. We believe ample justification existed for not giving such an instruction, for the court stated that due to the fact the ''testimony of the prosecutrix in both counts of the information before us was credibly and impressively corroborated, we would not be justified in directing a reversal herein because of the refusal of the trial court to give the requested instructions of a cautionary nature.'' No other case has been cited by respondent in substantiation of its contention, and we must therefore assume that sole reliance is placed thereon to defeat defendant's charge of error.

If the position taken by defendant in this regard is sound, then it can only be so by virtue of the particular type of crime charged and the peculiarly vulnerable position in which the defendant usually is placed. Otherwise he would not be entitled to such an instruction. With this in mind the complete record has been carefully examined.

The entire transcript with the exception of the testimony of the father, whose only observation was in regard to a particular roadway, the engineer, who drafted a map of the community, and the physician, who testified solely to certain medical facts, is replete with inconsistencies and contradictions. Some of which are harmless and similar to those which can always be found in contested matters, and are therefore of no particular import, but such cannot be said of the testimony as a whole.

The mother of the child was called first. She testified that the daughter was given money by the defendant. This was completely contradicted by the daughter who emphatically denied ever receiving anything from the defendant. She also admitted going to relatives of the defendant in the company of an old friend of the family, a barkeeper, designated only as ''Tom''—she did not know his last name—and demanding

$2,000, telling the relative her husband "wouldn't settle for anything less." The relative amplified this statement by adding that she also stated that if the money was not forthcoming it would "cost a lot more." She further admitted that on one occasion during the time involved herein she had desired the defendant to go to a dance with her but he had refused. On the afternoon when the offense charged in the first count was alleged to have occurred, she stated she was away from home for not more than a half hour, and that upon her return she saw the defendant and the two girls returning home, all of which was contradicted by another witness, who testified she was not at home when the children returned, but arrived later. She also testified that her immediate reaction to knowledge that her daughter was infected was that the defendant was the only one who could have done it, although the child had made no complaint to her.

The testimony of the seven-year-old prosecutrix was to the effect that the defendant, her playmate and herself walked to her grandmother's where they all sat in a swing. Then she later stated she was lying down and her playmate was climbing a tree. This in turn was contradicted by her playmate. To direct questions as to what happened in the swing she had no answer, and finally stated that she did not remember. Her answers to the leading and suggestive questions asked her by the district attorney appeared to be ready and prompt. However, on cross-examination she either could not or would not answer the questions asked. Yet, when the cross-examiner worded his queries in the same or similar language as was used by the district attorney, the same replies were immediately forthcoming.

The nine-year-old playmate of the prosecutrix testified before the grand jury that she and the prosecutrix went to the grandmother's alone—the defendant's arrival was not brought out. She further testified that during the course of the alleged act the defendant held on to both of the girls—that he held her by her left hand and her friend by her right; that he also tried to do the same to her but she got loose and climbed a tree; that the defendant ·chased her up the tree and tried to climb the tree after her but could not; that she did not call for help although her father was just on the other side of the hedge, nor did she later tell her father or mother; that she did not get down until after the defendant

left; that she went home and then went back to the home of the prosecutrix, and while going to feed a horse the defendant asked her again; that it was around six o'clock, and that she was just having supper at the time.

Upon her direct examination she testified that the defendant did not try to do anything to her; that just as her father called, the defendant started to leave and she went home; then she stated that the defendant was in the street— she thought he had left. Concerning her father calling her for dinner, she later stated that her father came to the home of the prosecutrix and asked her to come home and eat; after eating she washed the dishes and returned.

On cross-examination at the trial she stated that the three of them were all in the swing together, with the prosecutrix lying down, but later she stated she was in the tree; she then stated that after the defendant and prosecutrix got in the swing her father called her and she went home for supper, and that afterwards she went back to her friend to play. She emphatically insisted that the act occurred on October 6th, more than three months after June 26, 1942, the date alleged in the indictment, and in fact after the act alleged in the third count on August 6, 1942. She also insisted that it was on a school day and not during vacation; that she specifically recalled a young girl with whom she had walked home; that her teacher had placed certain things on the blackboard that day which was the reason for her definiteness; she also stated that is was on a Tuesday, and that her mother had told her it was two days before she saw the doctor, which was definitely September 11th; also that it could not have been in June because she and her family were living some place else at that time, and then later she stated she had lived in the same house for five years, while on cross-examination she testified her mother had told her that she had known the prosecutrix for only three weeks.

This court is well aware that before it is authorized to say that the testimony herein bears upon its face the brand of inherent improbability and is unbelievable *per se*, we must be warranted in concluding that what was testified to seemed impossible to have taken place under the circumstances.

However, in view of the facts of the case it would not seem necessary to so decide. We are confronted with a type of case that "arouses in the public mind an intense indignation

against the accused culprit; and it is not surprising that the same feeling sometimes finds its way into the jury box." (*People* v. *Hamilton*, 46 Cal. 540, 544.) Nor is it necessary in the present case for this court either directly or indirectly to invade the province of the jury by substituting our conclusions on the evidence for those of the jury, by a determination that the evidence *per se* is improbable or incredible. Rather we feel that under the particular circumstances presented by the uncertain testimony of the two young girls it is the duty of this court "to give critical attention to all of the rulings of the court during the trial and to the manner in which the jury was instructed, in order to satisfy our minds whether errors were committed that were prejudicial to the rights of the defendant." (*People* v. *Hubbell*, 54 Cal. App.2d 49 [128 P.2d 579].) It is because of this that we have summarized the evidence at some length.

In the case of *People* v. *Watrous*, 7 Cal.App.2d 7, 11 [45 P.2d 380], this court reversed a judgment of conviction of a violation of section 288 of the Penal Code, where substantially the same situation developed during the examination of the youthful witnesses as did in the present case. There it was held that "the testimony taken before the grand jury was the result of leading and suggestive questions and only then was it possible to bring out a narration of what was alleged to have occurred. On the other hand their testimony at the trial was quite direct and connected, indicating at least some preparation, and the language and expressions used by each of the children were almost identical as those employed by the other."

In many respects we find direct analogy between the case above cited and the one now before this court. Here we find two young girls testifying in detail and at length on direct examination and before the grand jury concerning the commission of the alleged offense, but who, on cross-examination, particularly in the case of the prosecutrix, refused or could answer to nothing but what was asked in the same or similar words as used by the district attorney; while the testimony of the corroborating witness reveals so many discrepancies or what might well be termed pure flights of make-believe, or at best, something which could happen only within the realm of fancied possibilities.

Such a record does not present a case wherein the

testimony of the complaining witness was so credibly and impressively corroborated so as not to justify a reversal because of the failure of the trial court to give the requested cautionary instruction. (*People* v. *Roberts, supra.*) For the same reason it presents a case wherein there is an evident necessity of giving critical attention to all of the rulings of the court and possible errors which otherwise might be considered as trivial and of no material consequence from a standpoint of adverse effect upon the rights of the defendant, but which may become of great importance when committed in a case of the character of that here involved. (*People* v. *Adams, supra; People* v. *Hubbell, supra.*)

In the Putnam case, *supra,* the trial court therein refused to instruct the jury in substantially the same words as included in the instruction given in the present case; "You are hereby instructed to view with great care and caution the testimony of a child of immature years." The Supreme Court, in passing upon the instruction, stated, at page 889, that the trial court properly refused to give the instruction, for it would have failed to instruct the jurors of the difficulty of defending against the charges made. It said: "Although ordinarily the jury need not be advised as to the reasons for the rule of law in an instruction, the facility with which charges of the kind here involved may be invented places the defendant in a peculiarly vulnerable position, usually with no defense except his own denial of the asserted misconduct. . . . A simple admonition to view the testimony of the complaining witness with caution would be inadequate and misleading, for it would convey the impression that for undisclosed reasons the trial judge distrusts the testimony of the particular witness."

The trial court herein, therefore, might not have erred by virtue of the fact that it gave *an* instruction, yet it was error to give an instruction inferring distrust of a particular witness, and it was further error not to give an appropriate instruction. It is incumbent upon a court in a criminal case to instruct the jury on its own motion charging them fully and fairly upon the law relating to the facts of the case, for, as stated in the case of *People* v. *Putnam, supra*: "An instruction is necessary if it is vital to a proper consideration of the evidence by the jury." Upon the record of the case and the authority of the cases cited there can be no doubt but

that an adequate cautionary instruction was vital to a proper consideration of the evidence.

Each case must be determined upon its own particular circumstances as to whether or not failure to so instruct a jury constitutes prejudicial error. It is apparent from an examination of the record in the present case that the failure to give a cautionary instruction was prejudicial and that a different verdict would not have been improbable had the error not occurred; or, as stated in *People* v. *Putnam, supra,* "In view of the circumscribed extent of the acts alleged and the inconsistencies of the witness' testimony, it is doubtful whether the same verdict would have been rendered had the cautionary instruction been given."

The judgment and order denying a motion for a new trial are reversed.

Adams, P. J., and Thompson, J., concurred.

A petition for a rehearing was denied October 15, 1943, and respondent's petition for a hearing by the Supreme Court was denied October 28, 1943.