[Crim. No. 4406.   First Dist., Div. One.   Feb. 17, 1964.]

THE  PEOPLE,  Plaintiff  and  Respondent,  v.  WILLIAM HUNTER  SUTTON,  Defendant  and  Appellant.

Roger Golla, under appointment by the District Court of Appeal, for Defendant and Appellant.

Stanley Mosk, Attorney General, Edward P. O'Brien and John F. Kraetzer, Deputy Attorneys General, for Plaintiff and Respondent.

BRAY, P. J.—Defendant appeals from judgment of conviction, after jury trial, of violation of section 285, Penal Code, incest,[1] and from the order denying new trial.[2]

## Question Presented.

Was the failure to give a cautionary instruction, when none was requested by defendant, prejudicial?

## Evidence.

Janice Sutton, the complaining witness and the daughter of the defendant, testified that on August 23, 1960, she accompanied defendant, her father, in a Chevrolet automobile, to check on a winch truck owned by defendant. The truck was kept in a wrecking yard outside Crescent City, California. Defendant left her in the car and got out to find the owner of the wrecking yard. Unable to do so, he returned to the car and drove further down the highway. He turned off onto a side road and parked the car. He sat there for a few minutes and then told her to remove her underthings, which she did. He thereupon committed an act of sexual intercourse with her. She told no one of this incident or of other such acts because ''Well, I was afraid of my father, in the first place, and, in the second place, he told me if I ever told my Mom that she would never love me any more and that we would both have to leave.'' She recalled the exact date of the incident, as well as the dates of other such incidents, because she kept a diary and on those days when she had intercourse with her father she entered a small letter on the top of the page to so indicate. On cross-examination, she testified that she did not keep her diary regularly and some of the entries were made at later dates and from memory. At the time of the incident charged she was 13. At the time of the trial she was 16.

There was testimony by other members of the family, as well as by Janice, that defendant had had intercourse with Janice on several other occasions. Mingus Sutton, her half-brother, testified that he saw an act of intercourse take place

---

[1]Defendant was originally charged with two offenses (1) statutory rape, (2) incest. After a trial at which the jury could not agree, defendant went to trial again on the incest charge alone.

[2]While defendant purports to appeal from an order denying new trial, the record fails to disclose that any motion for new trial was made nor any order denying new trial. In any event, as such an order is not appealable (Pen. Code, § 1237) the purported appeal from the order denying new trial will have to be dismissed.

between Janice and defendant while they were staying in a cabin in Oregon, and that he had seen other acts of intercourse while at their home in Crescent City. He admitted that he had been estranged from his father after December 12, 1960. Mingus' age is not given. However, he testified that in 1957 he was 17, so at the time he appeared in court he would be approximately 23. Mingus complained to his father in December of 1959 about the latter having intercourse with Janice and his father threatened to blow Mingus' brains out if he told anyone. Mingus left home soon after that. Dennis Sutton, Janice's brother (15 or 16 at date of trial) corroborated Mingus' testimony that Janice had slept with defendant in Oregon, and further testified that he had seen an act of intercourse between Janice and the defendant take place in their home. He corroborated Janice's testimony that defendant's truck was kept at the wrecking yard near Crescent City. He testified his father had given him quite a few beatings, had threatened him with a hammer on one occasion, had hit him with a stump of a tree, and had taken his car away from him after his father's return from Missouri. Mrs. Sutton was not living with defendant and the children at the times related in the testimony. She remained in Crescent City where she had a job.

Defendant took the stand and denied that he had ever had intercourse with his daughter. He further testified that on returning home after a long absence, he attempted to discipline his daughter shortly before she accused him of the offense, at which time she threatened to get even with him. (Prosecutrix admitted that after defendant's return from a prolonged absence there was a certain amount of disharmony in the house, including punishments which she felt to be unjustly inflicted.) Defendant admitted going to the cabin in Oregon, but denied that Mingus could have seen any act of intercourse there because the partitions between the rooms reached the ceiling, not, as Mingus had testified, about 11 inches short of the ceiling. On rebuttal, pictures of the cabin were introduced showing that the partition did not reach the ceiling.

### *Cautionary Instruction.*

That it is well settled that in sex cases the failure to give the classic cautionary instruction is error, even when none is requested by the defendant, is conceded.

■ " [D]efendant urges that the court erred in failing to give a cautionary instruction to the effect that, in prosecu-

tions for sex offenses, accusations are easily made and difficult to disprove, and that the testimony of the prosecuting witnesses should be carefully examined. Even if such an instruction is not requested, as here, it is incumbent upon the court to give one on its own motion. (*People* v. *Nye,* 38 Cal.2d 34, 40 [237 P.2d 1]; *People* v. *Willis,* 129 Cal.App.2d 330, 336 [276 P.2d 853].)'' (*People* v. *Wein* (1958) 50 Cal. 2d 383, 406 [326 P.2d 457].)

In *People* v. *Nye* (1951) 38 Cal.2d 34 [237 P.2d 1], a prosecution for rape, the Supreme Court, per Traynor, J., elaborated the principle (p. 40): ''A conviction is permitted on the uncorroborated testimony of the prosecuting witness. Although protection of the public makes it necessary to allow convictions on such testimony, since the offense is usually committed in secret, the usual defense can only be a denial that the offense was committed by the defendant or in the case of forcible rape that the prosecuting witness voluntarily consented to the sexual act. Whether the prosecuting witness is a child or a mature person, the verdict will usually turn on whether the jury believes the defendant's or the victim's version of the occurrence, and there is the same danger of misinterpreting the defendant's acts as well as the danger of spite, blackmail, vindictiveness, private vengeance, neurotic fabrication or fanciful imagination.''

As stated in *People* v. *McGhee* (1954) 123 Cal.App. 2d 542, 544 [266 P.2d 874]: ''The reasons given for requiring the cautionary instruction in cases involving sex offenses, particularly where the testimony of the complaining witness is uncorroborated, as here, are (1) the fact that the only available direct witnesses are ordinarily the complaining witness and the defendant, and hence the charge is easy to make and difficult to disprove; (2) cases involving sex crimes generally arouse passion and prejudice in the minds of decent people, including jurors; (3) the ease with which the charge can be made to satisfy spite, vengeance, vindictiveness and other base motives. [Citations.]''

The issue on this appeal is whether the error in the court failing to give the cautionary instruction, sua sponte, is prejudicial. That such is not necessarily prejudicial is shown by a number of cases. In *People* v. *Nye, supra,* 38 Cal.2d 34, the error was held nonprejudicial under the circumstances of that case. There the court said (p. 40): ''The circumstances of each case determine whether failure to give the instruction was prejudicial.''

In the following cases the courts felt that the circumstances of the particular case were such that it was not believed that the jury would have rejected the testimony of the prosecutrix had the cautionary instruction been given. (*People* v. *Nye, supra,* 38 Cal.2d 34 (assault with intent to commit rape); *People* v. *Wein, supra,* 50 Cal.2d 383 (several counts of rape over a period of time); *People* v. *Lucas* (1940) 16 Cal.2d 178, 182 [105 P.2d 102, 130 A.L.R. 1485] (contributing to the delinquency of a minor).) In the latter case the court said (p. 182) : ''The authorities are legion to the effect that before a judgment may be reversed because of error it must appear from the record that it was prejudicial and caused substantial injury and that a different result would have been probable if the error had not occurred.'' See also *People* v. *Moore* (1961) 196 Cal.App.2d 91, 101 [16 Cal.Rptr. 294] (abduction of a woman for defilement); *People* v. *Whipple* (1961) 192 Cal.App.2d 179, 188 [13 Cal.Rptr. 378] (pimping); *People* v. *House* (1958) 157 Cal.App.2d 151, 156 [320 P.2d 542] (assault with intent to commit rape); *People* v. *Willis* (1954) 129 Cal.App.2d 330, 336 [276 P.2d 853] (unnatural sex acts). In that case we listed four cases in addition to those mentioned herein, where the failure to give the instruction was held not to be prejudicial. In *People* v. *Roberts* (1942) 50 Cal.App.2d 558,568 [123 P.2d 628] (statutory rape and lewd conduct with a child), the court refers to 10 prior cases in which the failure to give the cautionary instruction was held nonprejudicial, and to only one in which it was held to be prejudicial. That was *People* v. *Benson* (1857) 6 Cal. 221, 223 [65 Am.Dec. 506], which the court distinguishes by saying that in that case ''the prosecution was based solely upon the testimony of the prosecutrix, unsupported by facts or circumstances corroborating it, and in itself so inherently improbable as to challenge belief by reasonable men.''

There are comparatively few cases in which it was held that the failure to give the cautionary instruction was prejudicial. Of these, four cited by defendant are distinguished in *People* v. *Nye, supra,* 38 Cal.2d 34, 40, 41, on the basis of the facts there involved and the inconsistency and inherent improbability of the testimony. They are: *People* v. *Putnam* (1942) 20 Cal.2d 885 [129 P.2d 367]; *People* v. *Rankins* (1944) 66 Cal.App.2d 956 [153 P.2d 399]; *People* v. *Trumbo* (1943) 60 Cal.App.2d 681 [141 P.2d 225]; and *People* v. *Williams* (1942) 55 Cal.App.2d 696 [131 P.2d 851].

In *People* v. *McGhee, supra,* 123 Cal.App.2d 542 (pimping) the failure to give the cautionary instruction was held prejudicial. In that case there was a complete absence of corroboration of the complaining witness, there were circumstances which could have inflamed the jury, and there was strong evidence of the possibility of spite and revenge.

In the case at bench the evidence against defendant is strong, stronger as to guilt than were the situations in the cases which held prejudicial the failure to give the cautionary instruction. Although there were no eyewitnesses to the act charged, and defendant's guilt as to that act depends mainly upon the resolving of the conflict between the testimony of Janice and the unequivocal denial of defendant, there are circumstances which point strongly to defendant's guilt. Janice testified that the act took place in Del Norte County on August 23, 1960. At the first trial defendant testified positively that he left California on August 22 and went to Reno where he remained until the 28th, and particularly that he was neither in Orick nor Eureka on the 25th; that he had not sold axe handles in Orick on that date.[3] (Defendant was in the business of selling axe handles which he had brought from Missouri.) At this trial he testified that he could not remember whether he was in any of these places on those dates. John Conlin, owner of a shop in Orick, testified that on August 25 he purchased axe handles from a man who gave him a receipt therefor. Defendant after some equivocation admitted ''that looks like my signature.'' A handwriting expert testified that the receipt bore defendant's signature. Although the date was not in defendant's handwriting, Conlin testified that August 25 was the date he bought the axe handles and received the receipt. Defendant admitted selling axe handles to Conlin but contended it could have been at another time.

A Mrs. Salel, who, with her mother, ran the Anderson Hotel in Eureka, produced a registration card signed by defendant showing a Mr. Sutton was registered there on August 25. There were three in the party. Janice had testified that at that time defendant, Dennis and she stayed there. When shown the card defendant said that the signature looked like his but he couldn't swear ''positive'' that it was. However, he couldn't swear that he was or was not at the Anderson Hotel on August 25. He had stayed there. At

[3]These dates and places were important in connection with the testimony of both Dennis and Janice.

the previous trial he had denied being at the Anderson Hotel with the children on that date. Also, as hereinbefore stated, defendant testified that the partition in the bedroom in the Oregon house, by looking over which Mingus testified he had seen defendant having intercourse with Janice, went to the ceiling. Pictures of the room showed that, as testified by Mingus, the partition was about 11 inches short of touching the ceiling. (Mingus was 6 feet 1 inch tall.)

Defendant's story that the testimony of the children against him was because he had disciplined them is not convincing. While the other incestuous acts testified to by Janice, Mingus and Dennis, and denied by defendant, could not be used to corroborate Janice as to the act charged, they did show the incestuous disposition of defendant. The judge charged the jury that they must be limited to that effect.

Janice's testimony was far from improbable. A vigorous cross-examination failed to throw doubt upon her story.

It is difficult to believe that had the court instructed that Janice's testimony should be viewed with caution the jury would have disregarded the testimony of Mingus, Dennis or her, would have overlooked defendant's contradictions, or the documentary evidence showing that defendant was where he testified at the first trial he was not, or where, at this trial, he was not sure whether he was or not. Nor is it reasonably probable that had the instruction been given the result would have been different.

The purported appeal from the order denying a new trial is dismissed. The judgment is affirmed.

Sullivan, J., and Molinari, J., concurred.

A petition for a rehearing was denied March 12, 1964, and appellant's petition for a hearing by the Supreme Court was denied May 13, 1964.