[Crim. No. 3476.   Third Dist.   Feb. 20, 1964.]

THE PEOPLE, Plaintiff and Respondent, v. TIM JESSE ADAMSON et al., Defendants and Appellants.

Tim Jesse Adamson and Robert Baird, in pro per., and Robert J. Nareau, under appointment by the District Court of Appeal, for Defendants and Appellants.

Stanley Mosk, Attorney General, Doris H. Maier, Assistant Attorney General, and Raymond M. Momboisse, Deputy Attorney General, for Plaintiff and Respondent.

PIERCE, P. J.—Defendants, Adamson and Baird, found guilty by a jury of first degree robbery, appeal.

The charge on which defendants were tried was the robbery of a Sacramento liquor store on December 1, 1962. Admitted in evidence over objection was evidence of another robbery of a Reno grocery described by an eyewitness clerk as having been committed by the two defendants on December 15, 1962. It was admitted for the limited purpose of proving facts relevant to the crime charged, including a common design or modus operandi. The jury was cautioned and instructed regarding the limited purposes for which the evidence was received. Defendants assert that the evidence was nevertheless improperly received and that the error was prejudicial.

The principles of law which determine the admissibility of the kind of evidence under discussion are simple and well settled. These rules are not, however, always easy to apply. Evidence of other criminal acts committed by a defendant offered merely to prove his propensity for crime is inadmissible. "[I]n a criminal prosecution the defendant can be tried for no other offense than that which he is charged in the indictment or information; evidence of collateral independent crimes is not admissible ... ." (*People* v. *Albertson,* 23 Cal.2d 550, 576 [145 P.2d 7].) But as

was recently reasserted by our Supreme Court in *People* v. *Henderson* (Nov. 1963) 60 Cal.2d 482, at pages 494-495 [35 Cal.Rptr. 77, 386 P.2d 677] (quoting from *People* v. *Woods,* 35 Cal.2d 504, 509 [218 P.2d 981]) : " . . . 'It is settled in this state that except when it shows merely criminal disposition, evidence which tends logically and by reasonable inference to establish any fact material for the prosecution, or to overcome any material fact sought to be proved by the defense, is admissible although it may connect the accused with an offense not included in the charge.' " (See also *People* v. *Riser,* 47 Cal.2d 566, 578 [305 P.2d 1].)

After this quotation the courts adds on (page 495) ; "Although evidence of prior offenses carries with it the risk that its probative value may be outweighed by its possible prejudicial effect, *evaluation of this risk rests in the sound discretion of the trial court."* (Italics supplied.)

Under the foregoing rule evidence is admitted of similar acts which tend to show either guilty knowledge, intent (or motive) or design. (*People* v. *Coefield,* 37 Cal.2d 865, 870 [236 P.2d 570].)

It has been observed that the trial court, vested with a discretion, should nevertheless receive such evidence with extreme caution and "if its connection with the crime charged is not clearly perceived, the doubt is to be resolved in favor of the accused, instead of suffering the minds of the jurors to be prejudiced by an independent fact, carrying with it no proper evidence of the particular guilt." (*People* v. *Albertson, supra,* 23 Cal.2d 550, 577.)

The frequency with which appeals reach appellate courts in which evidence of other crimes has been received in evidence (the basis for admission being one or another of the several inclusionary grounds stated above) gives cause for reflection as to whether, in fact, doubts *are* being resolved in favor of the accused. It has been observed by a critical law review commentator (in 5 Hastings L.J., p. 74) that the categories of inclusionary evidence "have so riddled the general rule of exclusion[1] that the rule has become the exception and the exceptions the rule."

---

[1]Not all legal scholars have agreed that the exclusionary rule is the general rule. As we stated recently in *People* v. *Claborn,* 224 Cal.App. 2d 38 [36 Cal.Rptr. 132], Dean Wigmore has expressed the opinion that the rules of admissibility are "not an exception to the exclusionary rule; in fact, the latter is the exception to the general principle 'that all facts affording any reasonable inference as to the act charged are relevant and admissible.' " (1 Wigmore on Evidence (3d ed.) § 216, p. 716.)

Sound reasoning has prompted a warning to trial courts of the dangers inherent in an indiscriminate acceptance of evidence of other crimes. It is stated in *People* v. *Albertson, supra,* at page 577: " '... It does not reflect in any degree upon the intelligence, integrity, or the honesty of purpose of the juror that matters of a prejudicial character find a permanent lodgment in his mind, which will, inadvertently and unconsciously, enter into and affect his verdict. The juror does not possess that trained and disciplined mind which enables him either closely or judicially to discriminate between that which he is permitted to consider and that which he is not.' "

Because of the tendency noted for seemingly greater and greater tolerance in the acceptance of evidence of other crimes, we have examined most carefully the evidence in the case at bench to determine whether evidence of the Reno robbery was sufficiently relevant and material to prove a necessary element of the offense for which defendants were on trial so that the trial court was within the bounds of discretion in admitting such evidence. We have concluded that it was, and now state the facts which explain why the evidence was properly received.[2]

Principal prosecution witness at the trial was a Mrs. Ruby Wilson, the clerk and only occupant of the store when the Sacramento robbery was committed. She positively identified the two defendants as the miscreants. Besides the courtroom identification, she had identified photographs of the two defendants from an estimated number of ten others exhibited to her. These had been selected from police records on the basis of her description of the men who had held up the store. This photo-identification had occurred before the defendants were apprehended. After their arrest, she also identified the two in separate "line-ups."

Nevertheless, her identification was vigorously attacked by the defense. The two defendants, testifying on their own behalf, presented alibi evidence supported by corroborating witnesses. The corroboration was not unchallenged by the

---

[2]We state this evidence in some detail, conscious of criticism which we think has been justly directed at the courts (by legal essayists and dissenting jurists alike) for a "seemingly mechanical application" of the inclusionary rule without regard to the question of whether the facts of a stated case show a circumstantial materiality and relevancy justifying its application. (See, Ivon B. Blum, 7 U.C.L.A. Law Rev., pp. 463-464.)

prosecution but proof of alibi was sufficiently strong to constitute production of other evidence by the prosecution to support the charge most important. Thus evidence of the Reno incident if it did strongly indicate a design, or modus operandi, was both relevant and material.

Such proof was undertaken first by Mrs. Wilson's testimony of the methods of the two men who robbed her: the shorter man, identified as Adamson, had produced a revolver and pointed it toward her. It was held by the man, close to his hip. The other man, identified as Baird, had gone behind the counter to the cash register and, of its contents, he took only currency, ignoring the coins. When the holder of the gun had noted her scrutiny of him he told her to turn around.

The Reno incident occurred two weeks later. At about 1:45 p.m. two men, identified as defendants Adamson and Baird, entered the Reno grocery store. Adamson produced a hand gun which he held "down on his side." He directed the gun toward the clerk, George Durkee (a prosecution witness), ordered him to turn his back. Baird went around the counter while Adamson continued to "hold" the gun on Durkee. Baird took money from the cash register and from a cigar box. Only currency and silver dollars were taken.

Among the "parallels" between the two robberies pointed out by the Attorney General we note the following: armed robbery of a small store in a quiet neighborhood, committed on a Saturday (when stores customarily cash checks in greater amounts), the distinctive manner in which the pistol was held, the identical roles each man played respectively on both occasions, and the instructions to the vicitm to turn his back. Of greatest significance to us is the fact that only currency or silver dollars were taken; nothing smaller.

Although a similar crime committed in places as widely separated as Sacramento and Reno might under other circumstances lessen the value of evidence to show design, proof here that the two defendants, apprehended after the Reno robbery, had borrowed Baird's uncle's automobile in Sacramento removed any doubt produced by the differential of geography.

Probative force of evidence of the Reno holdup, in counterbalance to its bias-producing qualities, receives added weight on the issue of identification. The record shows that Mrs. Wilson identified pictures of the two defendants on December 14th, the day *before* the Reno robbery. She selected these

pictures from an assortment submitted to her by detectives. Proof that the same two men had committed both offenses would have a tendency to demonstrate that Mrs. Wilson's selection of pictures of December 14th was not just a coincidence but was based upon actual recollection of the appearance of the two men who had robbed her. Thus evidence of the Reno holdup was logically relevant, not only to show a common system or method, but also to fortify Mrs. Wilson's identification of defendants.

The Attorney General has enumerated a number of asserted "similarities" between the methods used in perpetration of the crime charged and those in the Reno holdup other than those mentioned above. We ignore them purposely for the reason that they are methods common to any armed robbery and therefore can have no significance to prove design. If admission of proof of other crimes were to be hinged upon a showing of methods common to most or many robbery practitioners, then application of the inclusionary rule would be so broad as to nullify the principle that a defendant is not to be convicted because the prosecution can prove, on his prior (or subsequent) record, that he is a bad man. Assertion of the principle of exclusion as a preliminary to its avoidance becomes mere pretense. But such is not the case here. The similarities of method described do actually bring this case within the inclusionary rule. For authoritative analogies we cite *People* v. *Coefield, supra,* 37 Cal.2d 865, 869 (liquor store robberies), *People* v. *Houston,* 219 Cal.App.2d 187 [33 Cal. Rptr. 26] (Safeway store robberies), *People* v. *McCarty,* 164 Cal.App.2d 322, 325-326 [330 P.2d 484] (robbery of Western Union offices), and *People* v. *Grimes,* 113 Cal.App.2d 365, 371 [248 P.2d 130] (drugstore burglaries). It is unnecessary to extend this opinion by detailed discussion of the apposite facts there involved. The latest application of the rule by our Supreme Court is in *People* v. *Henderson, supra,* 60 Cal.2d 482, 494, where, in a homicide case, the victim being a woman, evidence of an earlier sexual assault by defendant on another woman was admitted to prove motive of the crime charged.

The contention that proof here of the other robbery was improper must be denied.

█  Other contentions are made here by defendants. Those relating to misconduct of the prosecuting attorney in the questioning of witnesses regarding the Reno robbery and in argument did not stray beyond the purpose for which we have held the evidence was properly received. It is unneces-

sary to state the incidents urged in detail. Misconduct is urged because the prosecutor referred to the store in Reno as a "liquor store" in his cross-examination of defendant Adamson. This was an obvious slip of the tongue and harmless.

Other contentions so clearly lack substance as to require no consideration.

Adamson's appeal from the order denying his motion for a new trial is nonappealable and is dismissed.

The judgments are affirmed.

Schottky, J., and Friedman, J., concurred.

Appellants' petition for a hearing by the Supreme Court was denied April 15, 1964. Peters, J., was of the opinion that the petition should be granted.