[Crim. No. 19836. Jan. 16, 1978.]

THE PEOPLE, Plaintiff and Respondent, v.
CHARLIE THOMAS, Defendant and Appellant.

458

**COUNSEL**

Bruce Robert Kay, under appointment by the Supreme Court, for Defendant and Appellant.

Paul Halvonik, State Public Defender, Charles M. Sevilla, Chief Assistant State Public Defender, Richard A. Curtis and Joseph Levine, Deputy State Public Defenders, as Amici Curiae on behalf of Defendant and Appellant.

Evelle J. Younger, Attorney General, Jack R. Winkler, Chief Assistant Attorney General, S. Clark Moore, Assistant Attorney General, Edward T. Fogel, Jr., and Nancy A. Saggese, Deputy Attorneys General, for Plaintiff and Respondent.

## OPINION

**RICHARDSON, J.**—Defendant Charlie Thomas appeals from an order granting probation (Pen. Code, § 1237, subd. 1) following convictions of three counts of committing lewd and lascivious acts on the body of a child under the age of 14 years (*id.,* § 288). The appeal presents questions regarding the admissibility in a sex offense case of prior similar sex offenses by the defendant. We will conclude that, under the circumstances in this case, it was prejudicial error to admit the evidence at issue and accordingly will reverse the judgment.

Defendant was charged by information with three counts of violating Penal Code section 288, which makes it unlawful "willfully and lewdly [to] commit any lewd or lascivious act . . . upon or with the body, . . . of a child under the age of 14 years, with the intent of arousing, appealing to, or gratifying the lust or passions or sexual desires of such person or of such child, . . ." The first two counts charged defendant with committing lewd acts on his stepdaughter, M, then twelve years old. The third count charged defendant with committing a similar offense on his natural daughter, R, then nine years old. Following a trial by jury, defendant was found guilty on all three counts and was placed on probation under various conditions.

Both M and R testified extensively regarding defendant's improper conduct, including acts of sexual intercourse with both girls. We find it unnecessary to recite the details of their testimony, for defendant does not challenge the sufficiency of the evidence to support the convictions. R admitted at trial that she had previously told defense counsel that her preliminary hearing testimony against defendant was false and that it had been suggested to her by defendant's other natural daughter, C. R also testified, however, that on this prior occasion she had lied to defense counsel because she did not want her father to go to jail. Defendant at trial denied any improper acts with M or R, although admitting that he had on one occasion, without any lewd intent, applied medication to M's bare chest.

Over defendant's objection, the People were permitted to introduce C's testimony regarding defendant's illicit acts upon her when she was a child. According to C (who was 24 when she testified), defendant first molested her when she was 6 years old; defendant frequently fondled her sexually, and when she was 12 he had sexual intercourse with her; between the ages of 12 and 14, sexual intercourse with C occurred "quite

often." Defendant contends that introduction of C's testimony was improper and constituted prejudicial error. We agree.

■ As a general rule, evidence that the defendant committed other crimes is inadmissible if offered solely to prove a criminal disposition on defendant's part. (*People* v. *Cramer* (1967) 67 Cal.2d 126, 129 [60 Cal.Rptr. 230, 429 P.2d 582]; *People* v. *Kelley* (1967) 66 Cal.2d 232, 238 [57 Cal.Rptr. 363, 424 P.2d 947]; Evid. Code, § 1101.) As we explained in *Cramer* and *Kelley,* the purposes of the foregoing exclusionary rule are threefold: (1) to avoid placing the accused in a position in which he must defend against uncharged offenses, (2) to guard against the probability that evidence of such uncharged acts would prejudice defendant in the minds of the jurors, and (3) to promote judicial efficiency by restricting proof of extraneous crimes. (*Cramer,* at p. 129 of 67 Cal.2d; *Kelley,* at pp. 238-239 of 66 Cal.2d.) In brief, although defendant's prior criminal acts may demonstrate his bad character and his propensity or disposition to commit the crime charged,". . . a defendant is not to be convicted because the prosecution can prove, on his prior (or subsequent) record, that he is a bad man." (*People* v. *Adamson* (1964) 225 Cal.App.2d 74, 79 [36 Cal.Rptr. 894] [sex crimes, as such, do not constitute an exception to the foregoing principle]; see Witkin, Cal. Evidence (2d ed. 1966) § 340, p. 299.)

■ There do exist, however, several exceptions to the general rule which are applicable in those instances in which the evidence of other crimes is relevant to prove some fact at issue other than the mere general disposition to commit such acts. As expressed in *Kelley,* "It is settled that evidence of other crimes is ordinarily admissible where it tends to show guilty knowledge, motive, intent, or presence of a common design or plan." (66 Cal.2d at p. 239; see *People* v. *Cramer, supra,* 67 Cal.2d at p. 129 [exception where there is a "common design, plan, or *modus operandi*"]; *People* v. *Ing* (1967) 65 Cal.2d 603 [55 Cal.Rptr. 902, 422 P.2d 590] ["common scheme or plan to commit rape"]; Evid. Code, § 1101, subd. (b) ["motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident"].)

1. *Common Design or Plan*

■ The "common design or plan" exception frequently arises in sex offense cases (such as *Kelley, Cramer* and *Ing*), although it applies generally in all criminal cases (see, e.g., *People* v. *Sam* (1969) 71 Cal.2d 194, 203-205 [77 Cal.Rptr. 804, 454 P.2d 700]; *People* v. *Peete* (1946) 28

Cal.2d 306, 317 [169 P.2d 924]). This exception has two distinct aspects or applications: (1) It may refer to the defendant's modus operandi or distinctive, characteristic method of committing crimes. (*Cramer, supra,* at p. 130 of 67 Cal.2d; *Sam, supra,* at pp. 204-205 of 71 Cal.2d.) (2) It also may refer to " 'a larger continuing plan, scheme, or conspiracy, of which the present crime on trial is a part'. . . ." (*Sam,* at p. 205 of 71 Cal.2d, quoting from McCormick on Evidence (1954), p. 328; see also *People* v. *Covert* (1967) 249 Cal.App.2d 81, 86-87 [57 Cal.Rptr. 220] [recognizing the dual aspect of the exception].)

Ordinarily, evidence of a common design or plan would bear either on the issue of the defendant's *identity* as the perpetrator of the charged offense, or the defendant's *intent* to commit that offense. (See *People* v. *Hunt* (1977) 72 Cal.App.3d 190, 201-204 [139 Cal.Rptr. 675]; but see *Kelley,* at p. 243 of 66 Cal.2d, fn. 5, disapproving as "too restrictive" an earlier case limiting the common design or plan exception to cases in which identity is at issue.) In view of the fact, however, that the "plan" exception is separately listed in Evidence Code section 1101, subdivision (b), in addition to "identity" and "intent," there may be additional applications of the exception.

■ Our decisions in *Cramer* and *Kelley* are helpful in pinpointing the rationale underlying the common design or plan exception. Both cases recognized that although alleged sex offenses committed with persons other than the prosecuting witness are often unreliable and difficult to prove, nevertheless such evidence is admissible to show a common design or plan where the prior offenses (1) are not too remote in time, (2) are similar to the offense charged, and (3) are committed upon persons similar to the prosecuting witness. (*Kelley,* at p. 243 of 66 Cal.2d; *Cramer,* at p. 129 of 67 Cal.2d.)

In *Cramer* we cited with approval earlier decisions holding that the test of admissibility under the common design or plan exception is "whether there is some clear connection between that [prior] offense and the one charged so that it may be logically inferred that if defendant is guilty of one he must be guilty of the other. Or as the matter is sometimes stated, the other offenses . . . are sufficiently similar and possess a sufficiently high degree of common features with the act charged where they warrant the inference that if the defendant committed the other acts he committed the act charged. [Citations.]" (67 Cal.2d at pp. 129-130.) *Cramer* upheld the admission of evidence of prior *recent* sex offenses against young boys under circumstances similar in many respects to the

offense charged. (See also *People* v. *Ing, supra,* 65 Cal.2d 603 [prior rapes disclosing similar modus operandi].)

On the other hand, *Kelley* involved similar offenses alleged to have been committed upon the accused's eight-year-old stepson, and we held inadmissible certain evidence of prior *remote* sex offenses committed with *consenting adults.* The prior offenses at issue were not admissible to prove a common design or plan because they were committed upon persons "quite dissimilar" to the prosecuting witness, involved distinctly different conduct, and were "too remote in time to have any reasonable bearing on the act charged, . . ." (*Id.,* at p. 244 of 66 Cal.2d.)

█ The evidence at issue herein does not qualify for admission under the standards expressed by us in *Cramer* and *Kelley.* C's testimony involved a course of conduct which occurred during a period between 10 and 18 years prior to the offenses with which defendant was charged. Although the prior offenses bore one important similarity with the present offenses, namely, molestation of, and intercourse with, defendant's own daughters, we must conclude, as we did in *Kelley,* that the prior conduct was simply too remote in time to be relevant to the present charges. The fact that defendant had molested one daughter a decade or more ago would not establish the fact that he had a continuing common plan or scheme to molest all of his daughters.

While we have said that "usually" the remoteness of evidence "goes to its weight, not to its admissibility" (*People* v. *Archerd* (1970) 3 Cal.3d 615, 639 [91 Cal.Rptr. 397, 477 P.2d 421]; see *People* v. *Greene* (1973) 34 Cal.App.3d 622, 639 [110 Cal.Rptr. 160]), we have also voiced numerous warnings that the danger of prejudice frequently outweighs the probative value derived from admission of prior sex crimes of the defendant. In this connection we have said that "the evidence should be received with 'extreme caution,' " that relevancy and admissibility of the evidence "must be examined with care," and "if its connection with the crime charged is not clearly perceived, the doubt should be resolved in favor of the accused. [Citations.]" (*Kelley, supra,* at p. 239 of 66 Cal.2d.) Therefore, assuming that the trial court in the matter before us exercised its discretion in weighing the prejudicial effects of the evidence against its probative value (Evid. Code, § 352), we must conclude that under the circumstances herein such discretion was abused by the admission of the evidence. █ As we observed in *People* v. *Haston* (1968) 69 Cal.2d 233 [70 Cal.Rptr. 419, 444 P.2d 91], although the admission of other offenses is essentially a discretionary matter, "that discretion must in all

cases be exercised within the context of the fundamental rule that relevant evidence whose probative value is outweighed by its prejudicial effect should not be admitted." (P. 246; see also *People* v. *Sam, supra,* 71 Cal.2d 194, 206; *People* v. *Greene, supra,* 34 Cal.App.3d 622, 635-636; *People* v. *Mendoza* (1974) 37 Cal.App.3d 717, 723 [112 Cal.Rptr. 565].)

### 2. *Proof of Intent*

▮ The People next contend that the evidence of defendant's prior offenses was admissible to prove his intent to gratify his passions through sexual contact with his daughters. ▮ *People* v. *Kelley, supra,* 66 Cal.2d 232, explained, however, that prior sex offenses are not generally admissible to prove intent unless the defendant has actually placed that element in issue (as when he has admitted the act occurred, but has denied the requisite intent because of accident or mistake). (66 Cal.2d at p. 243.) ▮ Even if we assume, arguendo, that defendant placed his intent in issue by "admitting" that he innocently medicated the chest of his daughter M, the remote evidence of his conduct with daughter C would not be reasonably probative of his *present* intent to gratify his passions by sexual contact with his daughters.

### 3. *Impeachment of Direct Examination*

▮ The People further contend that C's testimony was admissible to impeach that portion of defendant's version of the events developed on direct examination wherein he denied that he ever molested any of his children. (See *People* v. *Kelley, supra,* 66 Cal.2d 232, 239-240, fn. 2; *People* v. *Westek* (1948) 31 Cal.2d 469, 476 [190 P.2d 9].) Our examination of the record indicates, however, that defendant's testimony in this connection, in context, amounted only to a specific denial of the accusations of R and M, rather than a blanket denial of any prior misconduct of this sort. On direct examination, the following testimony was elicited:

"Q: Now, Charlie, you heard the testimony that you molested your children [R and M], do you know what molested means?

"A: Yes.

"Q: Have you ever done that?

"A: No, sir.

"Q: *During the month of November or December* did you ever molest or play with in a sexual sense any of your children?

"A: No, no sexual sense." (Italics added.) We construe the foregoing testimony as ambiguous at best regarding defendant's prior sexual conduct with persons other than R and M, and that, fairly, within the general rules above expressed, it cannot serve as the basis for impeachment in the manner attempted here.

### 4. *Corroboration of Prosecutrix' Testimony*

 Finally, the People urge that C's testimony was admissible, despite its remoteness, to corroborate the testimony of the prosecuting witnesses, R and M. Indeed, there are several Court of Appeal cases which suggest that evidence of prior sex offenses involving victims other than the prosecuting witness is generally admissible for the purpose of corroborating such witnesses without regard to the remoteness of the prior offenses or the lack of close similarity to the charged offense. (See *People* v. *Creighton* (1976) 57 Cal.App.3d 314, 322-326 [129 Cal.Rptr. 249]; *People* v. *Kazee* (1975) 47 Cal.App.3d 593, 596 [121 Cal.Rptr. 221]; *People* v. *Covert, supra,* 249 Cal.App.2d 81, 88.) For reasons which we hereafter develop, we have concluded that the rule as expressed in these cases is too broad and must, to that extent, be disapproved.

*Covert,* decided in 1967 shortly before our *Kelley* and *Cramer* cases were filed, noted that "Standing alone, the implicit challenge to the credibility of the prosecuting witness [in sex offense cases] creates relevance for evidence of similar sex offenses upon other persons." (Fn. omitted, 249 Cal.App.2d at p. 88.) *Covert* properly recognized that by reason of the unique circumstances of privacy and seclusion surrounding the commission of most sex offenses the determination of witness credibility plays a central role. *Covert* thereby found justification for the admission of evidence of defendant's other sex offenses as corroborative of the prosecuting witness' version of the event. We confirm, to an extent at least, the propriety of the *Covert* thesis, namely, that evidence of similar, nonremote offenses involving similar victims, declared admissible in *Kelley* and *Cramer* to show a common design or plan, may also assist in corroborating the prosecuting witness' version of events. Yet, we sense an inherent danger. Were the theory to be held applicable in *all* sex offense cases, without regard either to remoteness or similarity, the "corroboration" exception would absorb the general rule of exclusion in

its entirety, permitting introduction of all prior sex offenses for purposes of corroborating the prosecuting witness. In *Kelley,* we expressly cautioned against the adoption of a rule which might render the common design or plan exception meaningless whereby "Evidence of *any* 288a violation could be introduced in *any* 288a prosecution, . . ." (66 Cal.2d at p. 243, italics in original.)

In *People* v. *Stanley* (1967) 67 Cal.2d 812 [63 Cal.Rptr. 825, 433 P.2d 913], a case decided shortly after *Kelley* and *Cramer,* we considered whether a defendant's prior conduct with the prosecuting witness should be admissible to show defendant's lewd disposition or intent toward that witness. We noted that evidence of other sex offenses "between the parties" is ordinarily admitted "as corroboration of the testimony introduced to prove the commission of the specific offense charged, . . ." (P. 817.) Distinguishing the cases on the basis of the source of the testimony, we concluded that when evidence of such other offenses comes from the mouth of the prosecuting witness, as in *Stanley,* then "the trier of fact is not aided by evidence of other offenses where that evidence is limited to the uncorroborated testimony of the prosecuting witness." (*Ibid.*) *Stanley* thus stands only for the proposition that the prosecuting witness cannot give testimony regarding defendant's prior sex offenses *with that witness,* for such evidence "add[s] nothing to the prosecution's case . . . [and] involves a substantial danger of prejudice to defendant." (P. 819.)

 Subsequent cases, however, have misinterpreted the scope of our holding in *Stanley.* Thus, in *People* v. *Kazee, supra,* 47 Cal.App.3d 593, the court read *Stanley* as a "clear vindication of the *Covert* theory that the rationale for admissibility of evidence of sexual misconduct *with others,* in cases where there is no issue as to identity, absence of accident, and so forth, is simply corroboration of the complaining witness. Where such corroboration comes from the mouth of another witness, we admit it. When it consists of nothing but the complaining witness corroborating himself, we reject it." (P. 596, italics added.) However, we take express note of the fact that *Stanley's* holding was confined to situations involving prior sex offenses between defendant *and the prosecuting witness.* Nothing we said in *Stanley* would justify the general admission of evidence of *all* prior offenses with persons other than the prosecuting witness if the sole asserted purpose for the admission of such evidence was to corroborate the prosecuting witness. Rather, in such a situation, the remoteness and similarity restrictions expressed in *Kelley* and *Cramer* have particular application. To the extent that *Covert, Kazee* and

*Creighton* conflict with these principles, those cases are hereby disapproved.

■ In summary, we conclude that C's testimony regarding prior sex offenses committed by defendant was inadmissible under any of the theories proposed by the People, namely, (1) to show a common plan or scheme to commit such offenses; (2) to prove defendant's present intent to gratify his passions through sexual contact with his children; (3) to impeach defendant's testimony on direct examination; or (4) to corroborate the testimony of the prosecuting witnesses, R and M.

■ It is apparent that the trial court's error in admitting C's testimony was prejudicial to defendant. (See *People* v. *Kelley, supra*, 66 Cal.2d 232, 245 [prejudicial to admit prior violation of Pen. Code, § 288a in another § 288a case]; *People* v. *Guerrero* (1976) 16 Cal.3d 719, 730 [129 Cal.Rptr. 166, 548 P.2d 366] [prejudicial to admit prior rape in a murder case]; see also *People* v. *Wagner* (1975) 13 Cal.3d 612, 621 [119 Cal.Rptr. 457, 532 P.2d 105].) The case presented essentially a credibility determination for the jury, and the evidence, although strong, was not overwhelmingly against defendant's version of events. But for C's incriminating testimony, the jury might well have accepted defendant's theory that C had convinced R and M to fabricate their stories.

Although reversal of the judgment on the foregoing ground makes it unnecessary to reach defendant's other contentions, we treat one other issue which may arise on retrial. ■ Defendant contends the court erred in refusing to instruct the jury that "You should examine with caution the testimony of children of tender years upon with [*sic*] and with whom the lewd or lascivious act is alleged to have been committed." Defendant acknowledges that we recently disapproved use of a similar instruction in *rape* cases, on the basis that "the disapproved instruction now performs no just function, since criminal charges involving sexual conduct are no more easily made or harder to defend against than many other classes of charges, and those who make such accusations should be deemed no more suspect in credibility than any other class of complainants." (*People* v. *Rincon-Pineda* (1975) 14 Cal.3d 864, 882 [123 Cal.Rptr. 119, 538 P.2d 247].) Defendant points out, however, that in *Rincon-Pineda* we left open the possibility of developing "new instructions designed to enhance juries' consideration of particular types of evidence, such as the testimony of a child of tender years." (*Ibid.*, fn. 6.)

██ Under the general rationale of *Rincon-Pineda,* it would be appropriate in certain cases for the trial court, in its discretion, to focus the jurors' attention upon specific aspects of the evidence which require the exercise of caution in appraising the testimony of a particular child witness. (See *id.,* at p. 885, fn. 9.) ██ The instruction proposed by defendant, however, improperly assumes that the testimony of *all* young children in sex cases is inherently suspect. ██ To the contrary, under present law, no distinction is made between the competence of young children and that of other witnesses. (Compare Evid. Code, § 701, subd. (b), with former Code Civ. Proc., § 1880, subd. 2.) ██ In any event, we conclude that the trial court did not abuse its discretion in refusing to give defendant's instruction. It is unnecessary to decide whether such an instruction would be improper in *every* case.

The judgment is reversed.

Tobriner, J., Mosk, J., and Manuel, J., concurred.

**BIRD, C. J.**—I concur in the judgment, but I must respectfully demur to the language of the majority opinion which holds that there was no error in the trial court's refusal to give a cautionary instruction as to the child complainants. The majority confuses *competency* of a witness with *reliability* and concludes that since a child is a competent witness, a cautionary instruction as to the reliability of a child's testimony is not required.

Consider the historical development of this area of the law. Cautionary instructions in cases involving sexual offenses against children have been mandatory in California for many years. (See, e.g., *People* v. *Benson* (1856) 6 Cal. 221; *People* v. *Putnam* (1942) 20 Cal.2d 885 [129 P.2d 236][1]; *People* v. *Vaughan* (1933) 131 Cal.App. 265 [21 P.2d 438]; *People* v. *Sutton* (1964) 224 Cal.App.2d 708 [37 Cal.Rptr. 23].) In these cases, our courts have consistently recognized that conviction of an innocent person was more likely because of the inflammatory nature of charges of sexual abuse of children. (See, e.g., *People* v. *Hamilton* (1873)

---

[1] *Putnam, supra,* was overruled by *People* v. *Rincon-Pineda* (1975) 14 Cal.3d 864, 882 [123 Cal.Rptr. 119, 538 P.2d 247], to the extent that *Putnam* indicated cautionary instructions were mandatory in all sex offense cases. As will be shown subsequently, *Rincon-Pineda* did not reach the question of the need for cautionary instructions in sexual offense cases with children complainants.

46 Cal. 540, 544-545; *People* v. *Trumbo* (1943) 60 Cal.App.2d 681, 686-687 [141 P.2d 225].) "[T]o the mind of the average citizen or juror, the mere fact that a person has been accused of the commission of such an offense seems to constitute sufficient evidence to warrant a verdict of 'guilty' . . . ." (*People* v. *Adams* (1939) 14 Cal.2d 154, 167 [93 P.2d 146].)

Further, our courts have been concerned about the vulnerability of children to suggestion or manipulation by adults who desired to use prosecution in this area for ulterior motives. (See *Adams, supra,* 14 Cal.2d at pp. 166-167; *People* v. *Garrett* (1938) 27 Cal.App.2d 249, 252 [81 P.2d 241].) " 'There is no class of prosecutions attended with so much danger, or which afford so ample an opportunity for the free play of malice and private vengeance,' . . ." (*Adams, supra,* 14 Cal.2d at p. 167, quoting from *People* v. *Benson, supra,* 6 Cal. at p. 223.) Additionally, concern has been expressed about the possibility that children may testify as to fantasy rather than reality. In *Ballard* v. *Superior Court* (1966) 64 Cal.2d 159 [49 Cal.Rptr. 302, 410 P.2d 838, 18 A.L.R.3d 1416], this court authorized the discretionary psychiatric examination of complainants to determine their credibility in cases involving sexual offenses. While this court in *Ballard* specifically refrained from requiring such an examination in every type of sexual offense case, it later explained that a *Ballard*-type examination ". . . would seem a minimum protection for a defendant *charged with molesting a child,* and only the rarest of cases would excuse counsel from obtaining one." (*People* v. *Lang* (1974) 11 Cal.3d 134, 140 fn. 3 [113 Cal.Rptr. 9, 520 P.2d 393].)

In 1975, this court held that cautionary instructions were no longer mandatory in cases involving the rape of an adult woman. (*People* v. *Rincon-Pineda, supra,* 14 Cal.3d 864.)[2] On appeal from the conviction of the accused, this court held that such an instruction "has outworn its usefulness and in modern circumstances is no longer to be given mandatory application." (*Id.,* at p. 877.) This court based its reasoning on a statistical analysis of *rape* prosecutions, from which it concluded that "it does not in fact appear that the accused perpetrators of sex offenses in general and rape in particular are subject to capricious conviction by inflamed tribunals of justice." (*Id.,* at p. 882.) While this conclusion was well-documented with respect to *rape,* it was *unsupported* by statistical or

---

[2]The specific instruction involved was former CALJIC No. 10.22, which read:

"A charge such as that made against the defendant in this case is one which is easily made and, once made, difficult to defend against, even if the person accused is innocent.

"Therefore, the law requires that you examine the testimony of the female person named in the information with caution."

empirical analyses with respect to other types of sexual offenses. In particular, this court made no analysis of the statistics in cases involving alleged child molestation. This court held that "[n]othing we say in this opinion should be construed as precluding the development of new instructions designed to enhance juries' consideration of particular types of evidence, such as *the testimony of a child of tender years.*" (*Id.,* at p. 883, fn. 6.) (Italics added.)

The majority opinion in our present case fails to follow through on the invitation in *Rincon-Pineda* to develop new instructions for cases involving the testimony of young children. Instead, the majority holds that the trial court did not err when it failed to give a cautionary instruction because such an instruction "improperly assumes that the testimony of *all* young children in sex cases is inherently suspect." (Maj. opn., *ante,* p. 471.) It is asserted that this is improper because "under present law, no distinction is made between the competence of young children and that of other witnesses." (Maj. opn., *ante,* p. 471.) However, this misses the point. The competency of a witness to testify has never heretofore been related to the need for a cautionary instruction and, in fact, has nothing to do with it. For example, an accomplice is a witness who is competent to testify, yet his testimony on behalf of the prosecution requires that a cautionary instruction be given.[3] (*People* v. *Miller* (1960) 185 Cal.App.2d 59 [8 Cal.Rptr. 91], app. dism., cert. den., 365 U.S. 568 [5 L.Ed.2d 807, 81 S.Ct. 755].) An oral admission or confession of an accused is another "type of evidence" (*Rincon-Pineda, supra,* 14 Cal.3d at p. 883, fn. 6) which is competent to be admitted but which, the jury is instructed, "ought to be viewed with caution." (CALJIC Nos. 2.70, 2.71.)

If, as the majority reasons, competency established reliability, then logically all cautionary instructions would be disapproved. If a witness were competent to testify, no cautionary instruction would be required. If a witness were not competent to testify, again no cautionary instruction would be required, since the witness should not be permitted to testify. Thus the majority has by its reasoning not only excluded cautionary instructions in cases involving sexual offenses with child complainants,

---

[3]CALJIC No. 3.18 provides that:

"It is the law that the testimony of an accomplice ought to be viewed with distrust. This does not mean that you may arbitrarily disregard such testimony, but you should give to it the weight to which you find it to be entitled after examining it with care and caution and in the light of all the evidence in the case."

but sub silentio has undermined *all* cautionary instructions. I cannot concur in such reasoning.[4]

**CLARK, J.,** Dissenting.—Daughter C's testimony concerning defendant's sex offenses against her when she was a child is clearly admissible to prove (1) common design or plan and (2) intent.

### COMMON DESIGN OR PLAN

The majority conclude that defendant's crimes against C were "simply too remote in time to be relevant to the present charges. The fact that defendant had molested one daughter a decade or more ago would not establish the fact that he had a continuing common plan or scheme to molest all of his daughters." (*Ante,* p. 466.)

Had the prior misconduct consisted of a single incident, one might agree. But, according to C, defendant's sex offenses against her continued for *eight years,* with intercourse occurring "quite often" for the last two years, and ceased only when she and her mother left defendant when C was 14. That defendant last molested C six years[1] before he began molesting M does not necessarily undercut the inference that he had a "continuing common plan or scheme to molest all of his daughters." To the contrary, the interval is perfectly consistent with such design, given the nature of defendant's deviancy and his opportunities to satisfy it, for defendant is apparently not sexually attracted to his daughters until they

---

[4]The majority also errs in relying on *Rincon-Pineda* as support for the proposition that the trial court had "discretion" to refuse to give appellant's proposed cautionary instruction. (Maj. opn., *ante,* p. 471.) The portion of *Rincon-Pineda* cited in support of this proposition deals only with a "trial court's discretion to comment on the particular facts of the case . . . ." (*Rincon-Pineda, supra,* 14 Cal.3d at p. 885, fn. 9.) These principles are inapplicable here, since neither appellant nor the Attorney General raises any issue about the trial court's power to comment upon the evidence.

At the very least, appellant may propose an instruction "relating particular facts [of his case] to any legal issue." (*People* v. *Sears* (1970) 2 Cal.3d 180, 190 [84 Cal.Rptr. 711, 465 P.2d 847].) If this instruction is properly drawn, appellant is "entitled" to have the court give it (*Rincon-Pineda, supra,* 14 Cal.3d at p. 885); there is no "discretion" to deny it.

[1]The majority's reference to defendant's molestation of C as having occurred a *decade* earlier is apparently based on the fact that the *charged* offenses with M and R occurred 10 years after the last uncharged offenses with C. However, although the charged offenses occurred when M was 12, she testified that defendant first began molesting her when she was 8, which would have been just 6 years after he last molested C.

become eight years old and none living with him during the interval in question was that old. Under the circumstances, the "remoteness" of the evidence of defendant's crimes against C goes to its weight, not to its admissibility.

## INTENT

In *People* v. *Kelley* (1967) 66 Cal.2d 232, 241 [57 Cal.Rptr. 363, 424 P.2d 947], Justice Peters writing for the majority cited with approval cases holding that "when the defendant in testifying in his own behalf acknowledges the physical touching of the child but asserts his innocent intent, thereby definitely placing in issue the necessary element of intent, the prosecution may then introduce . evidence that defendant has committed similar . offenses upon persons other than the prosecuting witness in order to ·rebut the testimony of the defendant on a point material to the establishment of his guilt of the crime charged. (*People* v. *Westek* [1948] 31 Cal.2d 469, 480-481 [190 P.2d 9]; see also, *People* v. *Honaker* [1962] 205 Cal.App.2d 243, 245 [22 Cal.Rptr. 829].)"

Daughter M testified that defendant initiated one of the charged episodes of molestation by awakening her to say he was going to put Vicks on her chest, but that instead of applying the medication, defendant fondled her breasts and vagina. Testifying in his own behalf, defendant admitted rubbing M's chest, but claimed he did so in order to apply the medication, and denied touching her vagina. By "acknowledg-[ing] the physical touching of the child but assert[ing] his innocent intent" defendant placed his intent in issue, enabling the People to elicit C's testimony in rebuttal. That defendant molested C for eight years is clearly probative of his intent in touching M's breasts. The "remoteness" of the evidence of prior sex crimes goes, again, to its weight, not to its admissibility.

The judgment should be affirmed.

On February 15, 1978, the opinion was modified to read as printed above.